Arlene **FLAX** et al.

v.

**W. S. POTTS** et al.

Civ. A. No. 4205.

United States District Court
N. D. Texas,

Fort Worth Division.

May 3, 1963.

the policy of racial segregation under which the public schools in the Fort Worth Independent School District are being operated, and directing that a plan be submitted providing for the transition to a public school system free of racial discrimination with all deliberate speed. Flax v. Potts, D.C., 204 F.Supp. 458. In connection with the affirmance of that judgment, the Court of Appeals directed that the School Board submit its plan within thirty days after receipt of the mandate in the trial court. Potts v. Flax, 5 Cir., 1963, 313 F.2d 284.

The defendants promptly informed the Court of Appeals that they would waive their right to proceed further with their appeal, and asked that the mandate be issued immediately. They filed their plan shortly after the mandate was received in this Court, and plaintiffs are urging numerous objections to it.

The following quotation from the plan, omitting its "whereas" clauses, shows the procedure suggested by the School Board for the transition to a school system to be operated without discrimination as to race and color:

"NOW THEREFORE: To insure the continued orderly and efficient operation of the school system, and to comply with the order of the Honorable United States District Court, and to instruct the school staff as to how they shall handle the problems of desegregation, the Board of Education of the Fort Worth Independent School District offers the following transitional rules and procedures for the approval of the Honorable Court.

"1. The school district boundary lines that are in effect at the date of the approval of this resolution by the Board of Education shall remain in effect.

"2. The existing regulations for transfer of pupils from one school district to another school district shall remain in effect.

"3. For the school session 1963–64 the existing rules for assignment

---

L. Clifford Davis, Fort Worth, Tex., W. J. Durham, Dallas, Tex., for plaintiffs.

Cecil A. Morgan and David B. Owen, Fort Worth, Tex., for defendant.

BREWSTER, District Judge.

Judgment has heretofore been entered in this case declaring unconstitutional

of pupils to schools shall remain in effect for all pupils in grades 2–12 and kindergarten. Each school year after the session for 1963–64 these rules shall apply to one less grade, proceeding from grade two to the twelfth grade, and, last, the kindergarten.

"4. For the school session 1963–64, and thereafter, parents may continue to send their children to the schools which formerly they would have attended from their particular places of residence at the time of this resolution.

"5. For the school session 1963–64 parents of any child in grade one heretofore not permitted to attend school in the district in which he resides because of his race may send him to the school in the district in which he resides subject to the rules shown below. Each school year after the session 1963–64 this order shall apply to one additional grade, proceeding from grade two to the twelfth grade and, last, the kindergarten.

"a. During the period of time beginning August 15 and extending through August 29 the parent, or guardian, and the child shall go to the school which the child would formerly have attended from his place of residence and notify the principal that the child will not attend that school. This will permit the principal to make orderly readjustment of building facilities, teacher assignments, and distribution of instructional supplies.

"As evidence that the parent, or guardian, and the child have complied with this requirement, the principal of the school which the child formerly would have attended shall fill out and give to the parent, or guardian, an appropriate form which shall be signed by the principal and by the parent or guardian.

"b. After notifying the principal of the school which formerly the child would have attended of the intention to change schools and after receipt of the form from him, and within the period of time beginning August 15 through August 29, the parent, or guardian, and the child shall go to the school of the district in which the child lives, present the signed form, and notify the principal that the child will attend that school. This will permit the principal to make orderly adjustment of building facilities, teacher assignments, and distribution on instructional supplies that will be necessary to receive the child. The principal of the receiving school may not reject the pupil.

"c. The responsibility for notifying both school principals of a change of school as outlined above rests with the pupil and his parent, or guardian.

"d. If a child and his parent, or guardian, move from one elementary district to another elementary district within the Fort Worth Independent School District, in which he could be affected by this rule, after the opening of school, the usual transfer provisions shall apply."

The plaintiffs' written objections to the plan are:

"1. Said plan does not comply with the orders of this Court heretofore entered directing the defendants to submit to a plan for effectuating a transition of the schools operated by the defendants from a racially discriminatory to a racially nondiscriminatory school system.

"2. Said plan does not comply with the order or judgment of the Honorable United States Court of Civil Appeals for the Fifth Circuit directing the board to submit a plan under the controlling principles of law involved.

"3. Said plan is inextricably tied to the duel system in that it maintains school district zones and boundary lines which in their operation

necessarily segregate enumerates because of their race.

"4. Said plan submitted adopts the transfer rules promulgated under the segregated system under which no Negro child could transfer to a so called white school. Such rules are contrary to provision five (a) and (b) of the plan submitted and the various rules are irreconcilable.

"5. Considering the nine years already lapsed, four of which have been consumed in litigation in the instant case, the period involved is too long to accomplish the mandate of the Brown decision.

"6. The Board has not shown the delay which it seeks necessitated by any administrative problem contemplated by the Brown decisions.

"7. The plan submitted deprives Negro students, above the grade one level for the ensuing term, of a present constitutional right to attend schools operated on a nondiscriminatory basis.

"8. The plan submitted deprives Negro students of an opportunity for education in certain vocational schools and courses.

"9. Said plan as submitted does not even pretend to include a program to eliminate racial discrimination in the adult education program operated by the defendants.

"10. Said plan as submitted is a continuation of the racially segregated school system heretofore operated by the defendants and their predecessors in the Fort Worth Independent School District."

The respective positions of the parties are better understood when the plan and the objections are considered in the light of the evidence offered in connection therewith, and of the briefs filed by each set of parties both before and after the hearing. Such positions may be generally summarized as follows: The defendants submit a so-called "stair-step" plan calling for racial desegregation of the first grade at the beginning of the 1963 fall school term, and for desegregation of an additional grade, progressing upwardly, at the beginning of each fall school term thereafter until racial segregation is eliminated in all twelve grades. After that twelve year period, kindergarten would then be desegregated. The plan makes no mention of the adult education program operated by the defendants. On the other hand, the plaintiffs insist that the plan should be rejected in its entirety, because the period suggested by the defendants for effecting the transition is too long; and that all grades should be desegregated at the beginning of the next fall school term. Specific objections to the plan are that it would deprive the Negro children above the desegregated grades of some courses available to the other students; that the sections 5 a, b and c of the plan requiring each first grade Negro student to go with his parent to the nearest Negro elementary school, rather than to the elementary school nearest his home, are racially discriminatory; that Negroes should be permitted to participate in the adult education program on the same basis as others; and that the School Board has given no valid reason for its proposal to operate the kindergarten on a racially segregated basis.

The rights of school students, the duties of the trial judge and the responsibilities of the school authorities in connection with the elimination of racial discrimination in public education are defined in the second opinion of Brown v. Board of Education, 1955, 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083. Important factors for determining the time required for full transition with deliberate speed are also detailed. Those rights, duties, responsibilities and factors have not been changed.

While that decision requires that the transition to a racially nondiscriminatory system be made "as soon as practicable" and "with all deliberate speed", it recognizes that there may be school districts where the local conditions "call for elimination of a variety of obstacles in making the transition." It declares

that the constitutional right of a student to attend a public school system operated on a racially nondiscriminatory basis shall not be allowed to yield simply because of local disagreement with the constitutional principles involved. At the same time, it recognizes that the public has an interest in the elimination of any local obstacles *"in a systematic and effective manner."* (Emphasis ours). Because of his "proximity to local conditions and the possible need for further hearings", the trial judge is charged with the duty of adjusting and reconciling those public and private needs by the exercise of traditional equity powers in deciding the manner of transition and the time needed therefor. The school authorities have the responsibility for "elucidating, assessing and solving" the "varied local school problems." Their plan must provide for "a prompt and reasonable start toward full compliance" with the mandate of the Brown case. They have the burden of showing that additional time will be necessary "in the public interest" and "consistent with good faith compliance at the earliest practicable date" after such start is made "to carry out the ruling in an effective manner." The trial court must then decide whether the plan of the school authorities "constitutes good faith implementation of the governing constitutional principles." The following paragraph listing some of the factors for the trial judge to consider in this connection is frequently quoted from the second opinion in the Brown case:

"While giving weight to these public and private considerations, the courts will require that the defendants make a prompt and reasonable start toward full compliance with our May 17, 1954, ruling. Once such a start has been made, the courts may find that additional time is necessary to carry out the ruling in an effective manner. The burden rests upon the defendants to establish that such time is necessary in the public interest and is consistent with good faith compliance at the earliest practicable date. To that end, the courts may consider problems related to administration, arising from the physical condition of the school plant, the school transportation system, personnel, revision of school districts and attendance areas into compact units to achieve a system of determining admission to the public schools on a nonracial basis, and revision of local laws and regulations which may be necessary in solving the foregoing problems. They will also consider the adequacy of any plans the defendants may propose to meet these problems and to effectuate a transition to a racially nondiscriminatory school system. During this period of transition, the courts will retain jurisdiction of these cases." 349 U.S., at p. 300, 75 S.Ct., at p. 756, 99 L.Ed. at p. 1086. See also Boson v. Rippy, 5 Cir., 1961, 285 F.2d 43.

■ Since local conditions are such an important factor in these cases, the authorities cited by the parties dealing with specific plans submitted by school authorities in distant areas are valuable only for the purpose of showing some of the constitutional defects which may occur in plans of this nature, and the general limits within which plans have heretofore been approved.

■ The following conclusions are reached after weighing the evidence in the light of the principles announced in the Brown case, supra:

1. The entire school system of the Fort Worth Independent School District should not be desegregated at one time.

2. While the School Board is acting in good faith, the plan submitted by it must be modified to the extent hereinafter provided.

3. The 1963 fall school term is the earliest time at which desegregation can be started in such school system.

4. A prompt and reasonable start toward full compliance with the ruling in the Brown case will be made by taking the following steps in the school sys-

tem operated by the Fort Worth Independent School District:

a. The desegregation of the first grade in all the schools beginning with the 1963 fall school term.

b. The desegregation of all classes in the adult education program of such system beginning with the 1963 fall school term.

c. The desegregation of all kindergarten classes beginning with the 1964 fall school term.

■ 5. Additional time will be necessary to implement complete desegregation of the entire school system "in a systematic and effective manner". The exact amount of time necessary can be determined better after the proper start has been made. Until the exact time can be determined, the School District will desegregate the second grade at the beginning of the 1964 fall school term, and will continue with the desegregation of an additional grade, progressing upwardly, at the beginning of each fall school term thereafter, until further order of this Court.

■ 6. Sections 5a, b and c of the plan calling in substance for each first grade student to report with his parent or guardian at "the school which the child would formerly have attended from his place of residence and notify the principal that the child will not attend that school" are racially discriminatory, and therefore will not be approved. Each first grade student, regardless of race or color, shall be permitted to go to the elementary school of the school district in which he resides for the purpose of enrolling just as if there had never been any racial segregation. While such school may not be the one nearest the respective homes of some of the students, this provision is consistent with realities and with the best interests of the school children. It will apply to all children alike, without regard to race or color, in the desegregated grades. Orderly administration of the schools requires school districts for the purpose of trying to maintain as nearly as possible a nu-merically equal distribution of students. It could be possible that the desire to protect small children from traffic hazards would cause school authorities to plan a district so that the children would not have to cross main arteries of traffic or railroads. It is also common sense that land upon which to locate a school may not be available in the exact center of a school district. The School Board may make reasonable provisions for enrollment of first grade students in advance of the beginning of school classes, but they shall not be based upon racial discrimination.

7. The Court will approve the remainder of the plan submitted to the School Board insofar as it is not in conflict with any of the provisions of this opinion or of the order entered in connection therewith.

The start based on the so-called "stair-step" plan is modeled after the one devised for the Dallas, Texas schools by the Court of Appeals for the Fifth Circuit in Boson v. Rippy, supra. The boundaries of the respective school districts serving Dallas and Fort Worth are only a few miles apart, and local problems material to desegregation of the two school systems cannot vary enough to make any difference. However, this Court does not adopt that portion of the plan here submitted calling for the desegregation of the regular grades to take twelve years, with an additional year for kindergarten. As has been said above, it cannot be determined now what period will be needed to effect complete integration. As time passes, the Court can make whatever provisions may be proper in the light of developments, as they occur. Until the entry of an order directing a change, the desegregation will proceed on the basis above stated.

■ The Fort Worth Independent School District operates kindergarten classes and an adult school. The latter is conducted at night for the persons who are above the normal age of high school students. The classes are available to those who did not graduate from high school, and also to graduates returning

for some particular subjects. Negroes are not accepted in those classes. The school authorities appeared to be under the impression that the adult school and the kindergarten classes occupied a different status because persons attending them were required to pay a fee. That position is untenable under Cooper v. Aaron, 358 U.S. 1, 19, 78 S.Ct. 1401, 1410, 3 L.Ed.2d 5, 17, and City of St. Petersburg v. Alsup, 5 Cir., 1956, 238 F.2d 830.

The difference in maturity of the students in the adult school and the kindergarten is the reason why the beginning of desegregation of the latter is delayed until the 1964 fall school term. Attendance at those classes is not compulsory as it is in the regular school grades. If a person should stay away from the adult school on account of desegregation, he would be making his own decision. On the other hand, a child of kindergarten age could be deprived of the benefit of that class by the decision of some one in authority over him. It is well known that there are adult extremists on both sides of the segregation issue who put their own prejudices ahead of the welfare of the school children and of the community. To desegregate kindergarten classes at the beginning, would make the small children pawns in the hands of those extremists. It is felt that much of that feeling will subside after the first year, and that the public and private needs will be properly reconciled by requiring racial segregation in kindergarten to be terminated beginning with the 1964 fall school term.

The plaintiffs complain that a few subjects are given in some high schools attended by white children and are not given in the Negro schools. The fact is true, but it is not due to racial discrimination. All of the required courses are taught in each of the schools. The ones here complained about are electives. They are given in any high school where a requisite number of students want them. The result is that some electives are available in one high school and not in any others. Arlington Heights and North Side high schools are attended only by white students. Some electives are taught in one and not in the other; yet students are not allowed to commute back and forth between the schools to get courses which are not available in their own school. Some of the courses taught in one of the Negro high schools are not available in the other high schools, Negro or white. The students in each of the schools have the same right in connection with these courses; and that is that if the required number are willing to attend a class, the course will be made available. No semblance of order could be maintained by permitting students to go back and forth across town to distant schools to get one elective high school subject.

The plaintiffs' remaining complaint is that some of the suggested transfer rules and administrative procedures conflict with the plan for desegregation. The order will provide that they are not effective to the extent to which they conflict with the provisions for desegregation. Some of them are not objectionable on their face. If they are applied in such manner as to accomplish an illegal purpose, the Court can then deal with the situation. Shuttlesworth v. Birmingham Board of Education, D.C. Ala., 1958, 162 F.Supp. 372, affirmed, 1958, 358 U.S. 101, 79 S.Ct. 221, 3 L.Ed. 2d 145.

The Court will retain jurisdiction of this case until the transition to a system free of racial discrimination is completed.

This opinion will serve as findings of fact and conclusions of law. Rule 52(b), F.R.Civ.P.

An order will be entered in accordance with this opinion.