Crystal Ann MILLER et al., Appellants,

v.

Joe BARNES, Superintendent of the Georgetown Independent School District, et al., Appellees.

No. 20882.

United States Court of Appeals
Fifth Circuit.

Feb. 27, 1964.

Tuttle, Chief Judge, dissented.

Price R. Ashton, Austin, Tex., Ashton, Allen & Kidd, Austin, Tex., for appellants.

William S. Lott, Georgetown, Tex., Joe H. Reynolds, Bracewell, Reynolds & Patterson, Houston, Tex., for appellees.

Before TUTTLE Chief Judge, and HUTCHESON and GEWIN, Circuit Judges.

GEWIN, Circuit Judge.

The appellants, a group of Negro school children of Georgetown, Texas, filed a complaint asking that appellees, the Georgetown Independent School District, its Superintendent, Board of Trustees, etc., be enjoined from continuing the practice of racial discrimination in the operation of public schools within said School District. On June 24, 1963, when the case came on for trial, appellees immediately offered the following resolution and plan of desegregation:

"WHEREAS, the Georgetown Independent School District has carefully studied and considered the ways and means to commence desegregation of its schools consistent with the decision of the United States Supreme Court in Brown vs. Board of Education [347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873, 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083] which provides that various local school problems may be taken into consideration in arriving at a fair and feasible plan to bring about desegregation; and

"WHEREAS, the Board of Trustees has considered these local problems, including the facts that all of the schools in the District are now overcrowded and that efforts to remedy such situation by erecting additional buildings have been stymied, even though a bond issue for the necessary funds was approved al-

most a year ago by the voters, as a result of a law suit seeking to enjoin the use of the funds to erect such buildings; and

"WHEREAS, we believe that the following plan is fair to all of the children in the District and that it is best, under all attendant circumstances which are present, for this School District:

"NOW, THEREFORE, BE IT RESOLVED that the following plan of desegregation be adopted by the Board of Trustees of Georgetown Independent School District:

"The first grade in each school in the District shall be desegregated commencing in September of 1964. Thereafter, the second grade through the twelfth grade shall be desegregated in succession on a grade a year basis during the next eleven years following the school year of 1964–1965, (at which time the first grade is to be desegregated under this plan).

"BE IT FURTHER RESOLVED that the attorneys for the School District file this plan with the Federal District Court in Austin, and that they present it to the Court as the plan best suited to the Georgetown Independent School District."

The appellants then presented their plan of desegregation which provided as follows:

"I. That beginning in September 1963 that the elementary schools or grades 1 through 5 should be integrated.

"II. That beginning in September 1964 that the junior high school or grades 6 through 8 should be integrated.

"III. That beginning in September 1965 that the remaining high school or grades 9 through 12 should be integrated."

At the conclusion of the evidence, the Court ruled that the School District be desegregated according to appellees' plan. Hence this appeal.

Appellants point out that the Supreme Court has ruled in Brown v. Board of Ed. of Topeka, 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083 (the second case) that the "inferior courts should * * * require that school authorities make a prompt and reasonable start toward full compliance," with the previous Brown case, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873, and that such be done "with all deliberate speed." While recognizing that the method by which desegregation of public schools is to be brought about is largely up to the trial court, it is argued that the court here abused its discretion. The contentions of appellants may be summarized as follows: (1) the inequality of the two systems, i. e., the colored school system and the white school system, is so great that a compliance with the mandate of "all deliberate speed" requires a plan whereby total integration will be effected in less than 13 years; or in appellants' own words: "Where great overt inequality exists, should the criterion be *forthwith* rather than *with all deliberate speed?*"; (2) under the plan adopted by the District Court, none of the named plaintiffs in this case will ever be afforded the opportunity to obtain an integrated education, that is, as we understand appellants' contention, integration under the stair-step plan will never catch up with them; and (3) there is no justification for the postponement of the plan till September of 1964.

To support the argument that "great overt inequality" in this case requires implementation of the Supreme Court's mandate "forthwith rather than with all deliberate speed," appellants offered in evidence a "Report of Accreditation Visit" made by the Texas Education Agency, after a visit and study of the School District in 1960. The report unquestionably discloses that the one Negro school in the district is inferior in both the physical plant and academic quality to the two White schools in the district.

The report further shows that all schools, Negro and White, are crowded and that all facilities must be up-graded. There is evidence in the record, however, that the colored students utilize the gymnasium, tennis courts, and the playfields of the white schools. More importantly, there is evidence that a new school will soon be built in the colored neighborhood.[1]

The testimony of the President of the Board of Trustees was to the effect that the new school would be subject to the plan of desegregation adopted by the Court. There is further testimony that the new school would have been completed by January of 1964 had it not been for a suit filed in state court by the appellants in this case, which had the effect of preventing a sale of bonds for the financing of said building. We do not undertake to place the blame for the delay in the construction program. We have no difficulty in concluding, as the trial court evidently did, that all the parties here involved acted in good faith. We do observe that in the near future, according to the evidence, better provisions will be made, and the "great overt inequality" of which appellants complain will be reduced. There is evidence that numerous Negro residents in the area where the formerly all Negro school is located desire to retain the school plant in that area, and have requested that the proposed new construction be located there. The new school will be desegregated.

This case is not fraught with the problems that plague many school systems. It does not involve questions of admission, assignment, transfers, intelligence tests, school zones, fixed standards, administrative procedure or other similar matters. This is the first time any litigation seeking desegregation has arisen in the School District involved.[2] At the hearing in the District Court, the School Board recognized that it was bound by the decisions in the Brown cases, assumed its responsibility in that regard without compulsion by the court, and forthwith presented a plan of desegregation. The Board did contend that there should be a delay of one year, because the Board was without a Superintendent, and that the delay in construction would create problems if integration was ordered before the beginning of the 1964 school year. There is no evidence in the record, as has been true with some of the cases, that the Board refused to recognize its responsibilities or that it had abdicated its local control of the school system.

Inherent in all plans of desegregation are local problems peculiar to the area under consideration. This factor was recognized in both Brown decisions and in numerous cases decided subsequent to that time. This common factor however is not to be used as a smoke screen for delay, or as an excuse for failure of school authorities to discharge the responsibilities which they have assumed. Cooper v. Aaron, 358 U.S. 1, 20, 78 S.Ct. 1401, 3 L.Ed.2d 19 (1958); Watson, et al. v. City of Memphis, 373 U.S. 526, 83 S.Ct. 1314, 10 L.Ed.2d 529; Goss v. Board of Ed. of City of Knoxville, 373 U.S. 683, 83 S.Ct. 1405, 10 L.Ed.2d 632.

Plans of desegregation at the rate of a grade a year have not been nullified. The plan to be adopted rests largely in the discretion of the trial court who is familiar with local problems and conditions. Not only are the ambitions and desires of the plaintiffs in a particular action to be considered, but the welfare of all students, Negro and White, is fundamental to a consideration of any proposed plan. As stated in Kelley v.

1. The following from the appellees' brief is unchallenged:
   "It is anticipated, however, that the buildings will be available by September, 1964, at which time the desegregation can be commenced without a complete disruption of the educational program of the School District."

2. There was litigation in the state courts with reference to the sale of school bonds as mentioned elsewhere in this opinion.

Board of Ed. of City of Nashville, 6 Cir. 1959, 270 F.2d 209:

" * * * The reasons for the support of the plan were clearly given by the Superintendent of Schools, the former Superintendent of Schools, by the Acting Chairman of the Board of Education, and by one of the most experienced principals and teachers where the desegregation plan was operating. Among those reasons, including difficulties arising from the recruitment of teachers, was the most persuasive one—that children in the first grade had no sense of discrimination; that as the classes of Negro and white children progressed year by year up through high school, they would know no feelings of racial discrimination, until the entire school system had been harmoniously integrated. One may disagree with the gradual process, but we cannot say that such a plan is so unreasonable that the judgment of the district court approving the plan, in the light of the evidence before it, should be reversed as clearly erroneous."

This Court has had occasion to consider similar plans in Birmingham, Mobile and Savannah, and in all 3 cases a plan calling for desegregation of one grade per year was approved. Stell v. Savannah-Chatham County Bd. of Ed., 5 Cir. 1963, 318 F.2d 425; David v. Board of Sch. Comm. of Mobile County, 5 Cir. 1963, 322 F.2d 356; Armstrong v. Board of Ed. of City of Birmingham, 5 Cir. 1963, 323 F. 2d 333.[3] A recent district court case from the State of Texas involving the public schools of the City of Fort Worth approved a 12 year plan. Flax v. Potts, D.C.N.D.Tex. 1963, 218 F.Supp. 254. In the recent case of Calhoun v. Latimer 5 Cir., 321 F.2d 302, this Court likewise approved a 12 year plan.[4] The District Court rejected the petitioners' proposed 7 year plan, and we approved stating:

" * * * Gradualism in desegregation, if not the usual, is at least an accepted mode with the emphasis on getting the job of transition done."

3. These cases were advanced on the docket and were decided by the court pending appeal on the merits, but nothing said in any of the opinions indicates that a different result will be reached when the cases are decided on the merits. Substantially all questions were considered and passed upon by the court. The District Court in this case, having retained the case on the docket has inherent jurisdiction and the duty under the Brown cases to make any changes which may be indicated by future developments. It should be noted also that the President of the Board of Trustees of the School District testified as follows with respect to possible future changes:

"Q. And you're going to use up every bit of the time. Now, why do you think you should get 13 years?

"A. I don't say we're going to use up all the 13 years, no, sir.

"Q. Well, would you be willing to integrate if you got your school building built in two years?

"A. If everything is normal, and I was still on the school board and felt like it was a time to accelerate the program, I would be willing to do so."

* * *

"Q. I believe you've testified that in the event that after this plan had some opportunity in operation, then if you were still on the board, if the superintendent recommended the board approve of it, you would be willing, if the conditions were proper, to accelerate this program or plan that you presented to the Court this morning.

"A. I certainly would.

"Q. Incidentally, before you came forward with this plan, you as a board member investigated other types of plans, and programs of desegration being effected in the state of Texas, didn't you?

"A. Yes, sir.

"Q. And after having investigated these various plans and seeing how they worked, did you then come forward with this plan?

"A. Yes, sir."

4. Overt inequality was also an issue in the Calhoun-Latimer case as shown by the following quotation from the opinion;

"Another pertinent fact is that there is overcrowding in the school system particularly in those schools still having all Negro populations, with additional schools being needed. Some white schools are under populated."

As to appellants' second contention, that is, that integration will never catch up with the named plaintiffs, we have been directed to no decision holding that one has a constitutional right in all cases, regardless of the circumstances, to attend classes with those of another race. As stated by this Court in Avery v. Wichita Falls Independent School Dist., 241 F.2d 230, another Texas case:

"The Constitution as construed in the School Segregation Cases, Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873; Id., 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083, and Bolling v. Sharpe, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884, forbids any state action requiring segregation of children in public schools solely on account of race; it does not, however, require actual integration of the races."

The same principle was affirmed in the Birmingham case wherein it was stated:

"Nothing contained in this opinion or in the order directed to be issued by the district court is intended to mean that voluntary segregation is unlawful; or that the same is not legally permissible."

The court's order effectively desegregated both the White and the Negro schools in the first grades the first year, the second grades the second year and so on. To modify the order and desegregate the grades attended by the named plaintiffs would be to totally ignore the guidelines established by the Supreme Court in the second Brown case, and to place in their stead the fortuitous event of the plaintiffs' position or grade level in school. We cannot agree that the interests of the community and the children affected are to be absolutely subordinated to a heretofore undeclared right to attend integrated classes. District Courts have been directed by the decisions to give proper weight to "public and private" considerations. The plan under consideration applies with equal force to all schools in the district. Negro and White schools have been ordered to be desegregated. It may be true that appellants will not attend integrated classes as argued by them, but it is entirely possible for White students to enter formerly all Negro schools. The formerly all Negro school has been ordered desegregated as have the formerly all White schools.

■ This suit was filed September 5, 1962. The answer of the School Board was filed September 28, 1962. The School Board has stated that its construction program is expected to be completed by September 1964. In view of the delay in the effective date of the plan (September 1964), possibly resulting from the delayed construction of school buildings and the absence of a Superintendent of Education, it is our opinion that the Court's order should be modified so as to require the application of the plan to the first and second grades beginning in September of 1964, and thereafter, one grade per year.[5]

The judgment as modified by this opinion is affirmed.

TUTTLE, Chief Judge.

I respectfully dissent.

Of course, I agree with the slight modification of the trial court's order by requiring that the first two grades must be desegregated in 1964. Nevertheless, I think this modification of the plan of the School Board falls far short of what is required of this Court at this late date.

5. In Augustus v. Board of Public Instruction, 5 Cir. 1962, 306 F.2d 862, we said: " * * * The plan should, however, provide for the elimination of all dual school districts on racial lines at the earliest practicable time. If it appears too late for such eliminations as to any grade in time for the 1962 fall term, then the plan should provide for such elimination as to the first two grades for the 1963 fall term, and thereafter for such elimination as to at least one successive additional grade each school year."
See also Stell v. Savannah, 5 Cir. 1963, 318 F.2d 425, dissenting opinion by Judge Bell.

Over the years of my association with my esteemed colleague Judge Hutcheson, he has occasionally commented very effectively that court should not "keep the word of promise to [the] ear, and break it to [the] hope." [1] I had hoped that in the circumstances here present he would, as would my brother GEWIN, realize to what degree this Court would be guilty of such a charge if we were to affirm the judgment of the trial court.

Here, these twenty-odd children, with patience, waited for eight years for the School District to begin compliance with the fundamental requirements laid down by the Supreme Court as to such cases, that the District was duty-bound to "*devote every effort toward initiating* desegregation and bringing about the elimination of racial discrimination in the public school system." Cooper v. Aaron, 358 U.S. 1, 7, 78 S.Ct. 1401, 1404, 3 L.Ed.2d 19. Instead, they were met with a proposal that the Board of Education should build a new segregated Negro school, using the proceeds of a local bond issue for that purpose. This was too much. They sought and obtained a state court injunction—a result that any lawyer would reasonably have anticipated. They then sought an end to the practice of segregation in the school system and they were confronted by the claim, at least partially accepted by this Court, that the delay brought about by that litigation could warrant postponement of their realization of their constitutional rights.

The circumstances present in the Georgetown Independent School District demonstrate so clearly that there is no legal basis for further delaying implementation of Brown v. Topeka so far as these plaintiffs are concerned, that I consider it necessary to file a dissent to the proposition that "gradualism" may be approved in all cases, regardless of the circumstances. Here the court places the emphasis on "gradualism" rather than the devotion of "every effort toward initiating desegregation and bringing about the elimination of racial discrimination." The fact that the Supreme Court has granted certiorari in the Calhoun case, 375 U.S. 983, 84 S.Ct. 516, 11 L.Ed.2d 472, to deal with this precise question should, I think, require that we look with more than usual care to the dissenting opinion of Judge Rives in that case, 321 F.2d 302, 312. In that dissenting opinion it is pointed out what this Court has also said more recently in Davis v. Board of School Commissioners of Mobile County, 5 Cir., 322 F.2d 356, and Armstrong v. Board of Education of the City of Birmingham, 323 F.2d 333, that although a gradual approach [12 grade plan over 12 years] might have been permissible ten years ago, it may not be permissible at this late date in light of the recent Supreme Court decision in Watson v. City of Memphis, 373 U.S. 526, 83 S.Ct. 1314, 10 L.Ed.2d 529, and Goss v. Board of Education of City of Knoxville, 373 U.S. 683, 83 S.Ct. 1405, 10 L.Ed.2d 632. Moreover, the cases cited in the majority opinion for the proposition that this Court has approved twelve year plans in Savannah, Mobile and Birmingham do not stand for this proposition. The Savannah case involved an injunction *pending appeal* which was temporary only. The Mobile and Birmingham cases both required the application of the Alabama Pupil Placement law (Code 1940, Tit. 52, § 61(1) et seq.) "*as to all school grades without racial discrimination.*"

The particular circumstances in the Georgetown Independent School District are: that there is a relatively small number of Negro students (173 out of a total of approximately 1300 in the entire school district); there was evidence of a report made by a state accreditation committee which spoke of the serious imbalance between the Negro school and the white schools;[2] some of the space in

---

1. Macbeth, Act V, Scene VIII.

2. This survey said, "Although a number of deficiencies in areas in need of improve- ment have been described, of those indicated, the most serious was that of the imbalance which existed between the twelve-grade Carver School (the Negro

the white schools was filled by 77 students who were non-residents of the district but who had traditionally been permitted to attend as non-residents; additionally, there were twelve non-resident Negro students who were attending the Georgetown schools.

It seems plain to me that any reading of the record before us must convince anyone that the sole reason for delaying desegregation of the Georgetown School District beyond 1954 is a refusal of the white community to accept desegregation at a more rapid pace. This consideration was ruled out by the Supreme Court in the 1954 Brown decision which, after speaking of the "relevant factors" that might be considered by a district court as justifying some delay, said these factors, "of course, exclude hostility to racial desegregation."

The plaintiffs here, even in light of the special circumstances which warrant special consideration seeking an early end to the physical inequality between the white and Negro schools, have made modest demands. The plan submitted by them calls for total desegregation over a period of three years. In light of the failure of the Board until after suit was brought to discharge its clear duty to start complying with the Supreme Court's injunction, and in light of the fact that these plaintiffs would be entitled to the relief sought even under the now discarded doctrine of separate but equal facilities, and in light of the fact that no one of these 29 plaintiffs would ever be permitted to enjoy the fruits of the lawsuits which they were

compelled to bring to enforce their plain constitutional rights under the plan approved by the trial court,[3] it is clear to me that the Court's action in approving the Board's plan was an abuse of discretion.

I would reverse and require the approval of the plan submitted by the appellants.

HUTCHESON, Circuit Judge (specially concurring).

In view of the statement in the Chief Judge's dissent, that the majority opinion, while keeping the promise to the ear, has broken it to the hope, I must respectfully say that I do not believe that such a view is warranted by anything that was decided or said in the majority opinion. I should like to say further that nothing in the facts or decision in this case has any relation to the case of Cooper v. Aaron, 358 U.S. 1, 7, 78 S.Ct. 1401, 3 L.Ed.2d 19, cited by the Chief Judge in his dissent. That case dealt with an open, deliberate, and violent effort to interfere with desegregation. Nothing of that kind appears in this case. Indeed, the record clearly refutes the suggestion that either the School Board or the District Court was animated by opposition as such to desegregation. On the contrary, the district judge retained jurisdiction of the case for further orders at the foot of the decree, and, if addressed, can and no doubt will modify the fault in the decree, of which the dissenting judge makes so much, that without such modification some of the plaintiffs may never enjoy admission un-

---

school) and the larger Georgetown Schools (the white schools).

3. Each of the plaintiffs will necessarily be farther advanced in school than the second grade in 1964. Thus, while more and more grades are desegregated up to and including September 1975, these plaintiffs will normally keep at least one grade ahead of desegregation. Thus, is the "promise to the ear broken to the hope." It's a Pyrrhic victory indeed for the plaintiffs. While it is true that this is a class action, I think the Court, in considering the equities of the case,

should do more than dismiss this contention by saying that to provide a plan that would enable at least some of the plaintiffs to benefit from it would be "to totally ignore the guide lines established by the Supreme Court in the second Brown case." This adherence to the "guide lines" in the Brown case is misplaced, I think, in view of what I think is the clear departure from the fundamental guiding principle of Brown that reluctance to accept desegregation cannot be considered. Here, I think this is the *only* reason for delaying until 1975 full implementation.

der the proposed plan. If there were anything in the decree or the proceedings to indicate either that the school board or the district judge was animated by a feeling of opposition as such to desegregation and a determination to continue segregation indefinitely, the majority would have been as quick to sense this and to reverse the decree accordingly as the dissenting judge is.