Ralph STELL et al., Appellants,

v.

SAVANNAH–CHATHAM COUNTY BOARD OF EDUCATION et al. and Lawrence Roberts et al., Appellees.

Carolyn Eleanor HARRIS et al., Appellants,

v.

Linda Sue GIBSON et al., Appellees.

GLYNN COUNTY BOARD OF EDUCATION et al., Appellants,

v.

Linda Sue GIBSON et al., Appellees.

Nos. 20557, 20871.

United States Court of Appeals Fifth Circuit.

June 18, 1964.

Rehearing Denied in No. 20557, July 23, 1964.

56

See also 5 Cir., 322 F.2d 780.

**57**

E. H. Gadsden, B. Clarence Mayfield, Savannah, Ga., Constance B. Motley, Jack Greenberg, Derrick A. Bell, Jr., New York City, Donald L. Hollowell and Horace T. Ward, Atlanta, Ga., for appellants.

J. Walter Cowart, Savannah, Ga., Charles J. Bloch, Macon, Ga., E. Freeman Leverett, Deputy Asst. Atty. Gen. of Georgia, Elberton, Ga., R. Basil Morris, Savannah, Ga., George Stephen Leonard, Washington, D. C., R. Carter Pittman, Dalton, Ga., Eugene Cook, Atty. Gen., of George, Bernard N. Nightingale, Brunswick, Ga., Barrie L. Jones, Alma, Ga., Alan B. Smith, Brunswick, Ga., for appellees.

Before MARIS,\* GEWIN and BELL, Circuit Judges.

GRIFFIN B. BELL, Circuit Judge:

These appeals present issues arising out of a suit to desegregate the public school system of Savannah and Chatham County, Georgia (No. 20.557); and a suit to prevent the desegregation of the school system of Glynn County (Brunswick), Georgia (No. 20,871). The issues which are common to both cases will be considered together, while others, peculiar to the particular case, will be the subject of separate discussion.

The facts may be briefly stated. The appeal in the Savannah case is from an order of the District Court denying a preliminary injunction against the continued operation of a compulsory biracial school system. The denial was based on the affirmative defense, asserted by white intervenors, that disparate scores as between white and Negro pupils made on educational achievement and psychometric intelligence tests given in the Savannah schools warranted the classification of the schools for rational educational purposes on a basis which resulted only incidentally in a system separate for white and Negro children. We granted temporary relief pending the determination of the appeal. Stell v. Savannah-Chatham County Board of Education, 5

---

\* Of the Third Circuit, sitting by designation.

Cir., 1963, 318 F.2d 425. The District Court then entered the injunctive order directed by this court.[1]

The school board then put a plan into effect desegregating the twelfth grade with the beginning of school in September, 1963. All students in that grade were given an opportunity to apply for transfer to any senior high school in the system, and the applications were to be granted or denied with reference to numerous assignment criteria. The plan adopted was based on the original Atlanta plan. See Calhoun v. Latimer, 5 Cir., 1963, 321 F.2d 302. Appellants objected to the plan in toto but the District Court was of the view that it was without jurisdiction to accept or reject the plan. Twenty-four Negro students applied for transfer. Twenty-one were approved. Nineteen were transferred to two formerly all white high schools under the plan, the other two having declined to transfer. The other three transfers were denied for scholastic reasons.

The posture of the case on submission of the plan was that the District Court had dismissed the complaint in the interim between our granting emergency relief and when the hearing on the plan was proposed. However, the prior order of the court requiring the submission of a plan by the school board was preserved in the order of dismissal pending an appeal of the order of dismissal. Notice of appeal from the refusal of the court to approve or disapprove the plan was filed. Notice of appeal had previously been filed from the order denying the

preliminary injunction. No appeal was taken from the order thereafter dismissing the complaint.

Appellants contend that they were entitled to the preliminary injunction sought in the first instance, and that the board should have been required to submit a plan of desegregation encompassing transfers in all grades on some reasonable non-racial basis; with students entering the system for the first time to be assigned without regard to race; and with school zone lines being drawn on a non-racial basis as to the first four grades in September, 1964 and as to at least two grades per year thereafter.

The school board takes the position that the case is moot because no appeal was taken from the order dismissing the complaint; and asserts that there was no error in denying the injunction sought because the school board had made a good faith start toward desegregation. It is also urged that the sufficiency of the plan as submitted to the District Court is not now before this court for consideration.

The intervenors seek to support the findings and conclusion of the District Court that the evidence warranted the prior classification of the schools which only incidentally had been on the basis of race.

■ In the Glynn County case we have the situation of the District Court having enjoined the school board from effecting a voluntary plan of desegregation relative to the eleventh and twelfth

1. The school board, the individual members thereof, and the superintendent of schools were:

"* * * restrained and enjoined from requiring and permitting segregation of the races in any school under their supervision, from and after such time as may be necessary to make arrangements for admission of children to such schools on a racially non-discriminatory basis with all deliberate speed, as required by the Supreme Court in Brown v. Board of Education of Topeka, 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083.

"It is further ordered, adjudged and decreed that said persons be and they are hereby required to submit to this Court not later than July 1, 1963, a plan under which the said defendants propose to make an immediate start in the desegregation of the schools of Savannah-Chatham County, which plan shall include a statement that the maintenance of separate schools for the Negro and White children of Savannah shall be completely ended with respect to at least one grade during the school year commencing September, 1963, and with respect to at least one additional grade each school year thereafter."

grades to begin in September, 1963 in the only white high school. This suit was commenced by white parents individually and on behalf of their minor children after the school board had announced that the transfer applications of the six minor Negro intervenors would be granted. It was alleged that desegregation of the school would be detrimental to both races, and the prayer, as was that of the intervenors in the Savannah case, was for an injunction against the operation of a "compulsory racially integrated school system",[2] or in the alternative, that the school system be reorganized into a tertiary system, i. e., some schools for white, others for Negroes, and others for whites and Negroes with attendance being based on choice.

The Negro students who had been accepted for transfer were permitted to intervene. They sought the dissolution of the temporary restraining order against desegregation, and the entry of one on their behalf to the end that the school board be required to submit a plan for the reorganization of the entire school system on a non-racial basis. Their motion for preliminary injunction is still pending.

The District Court entered an order requiring the school board to prepare and submit a plan for the reorganization of the school system along non-racial lines with no applicant for transfer to be excluded solely on the grounds of color or other criteria unrelated to education. The plan was to be prepared only after hearings by the school board sitting as a school court pursuant to Georgia Code § 32–910.[3] The intervenors considered this to be inadequate, and after the filing of notice of appeal we granted temporary relief pending determination of the appeal. The order enjoining the proposed desegregation was vacated with direction to the District Court that the school board be restrained from refusing to admit the six Negro students in September, 1963. Harris v. Gibson, 5 Cir., 1963, 322 F.2d 780.

These intervenors now contend that the District Court erred in originally enjoining their school transfers, and in referring the matter of school desegregation back to the school board under the school administrative procedure statute. Ga.Code, § 32–910, supra. They complain of the failure of the school board to bring in a plan of desegregation for the entire school system, and, of course, are opposed to the position taken by the plaintiffs in their suit, which is the same as that of the intervenors in the Savannah case that classification on the basis of race is lawful where the educational aptitudes warrant the classification. The school board takes the position that the order of the District Court is erroneous and impermissible, that it was error to permit the intervention, and that the

2. No court has required a "compulsory racially integrated school system" to meet the constitutional mandate that there be no discrimination on the basis of race in the operation of public schools. See Evers v. Jackson Municipal Separate School District, 5 Cir., 1964, 328 F.2d 408, and cases there cited. The interdiction is against enforced racial segregation. Incidental integration, of course, occurs through the process of desegregation. Cf. Stone v. Board of Education of Atlanta, 5 Cir., 1962, 309 F.2d 638.

3. "The county, city or other independent board of education shall constitute a tribunal for hearing and determining any matter of local controversy in reference to the construction or administration of the school law, with power to summon witnesses and take testimony if necessary, and when such board has made a decision, it shall be binding on the parties: Provided however, either party shall have the right to appeal to the State Board of Education, which appeal shall be made through the local superintendent of schools in writing and shall distinctly set forth the question in dispute, the decision of the local board, a transcript of the testimony and other evidence adduced before the board certified as true and correct by the local superintendent, and a concise statement of the reasons why the decision below is complained of. This section shall apply to all county, city, or independent school systems in this State, regardless of when created. The State Board shall provide by regulation for notice to the parties and hearing on the appeal."

mandated order of injunction against the school board should be dissolved, and the school board allowed to go forward with the voluntary plan of desegregation free of the instant litigation.

## I.

### ISSUES SEPARATE TO THE RESPECTIVE CASES

■ The position of the Savannah board that its preliminary planning amounted to a good faith start toward desegregation is insufficient as an alternative reason for the denial of the temporary injunction. The short reply to the argument that the delay in desegregation was caused by the laws of Georgia to the contrary is that they have not served to impede desegregation since 1961. Both the University of Georgia and the Atlanta school system were desegregated in 1961. Holmes v. Danner, M.D.Ga., 1961, 191 F.Supp. 394; Calhoun v. Latimer, supra.

■ Neither is there merit in the position that the case is moot because no appeal was taken from the order of dismissal entered after the appeal to this court, and after entry of an injunction by the District Court at the direction of this court by way of interim relief. The order of dismissal expressly preserved that injunctive order which necessarily required the existence of a complaint for its support. Moreover, another notice of appeal was thereafter filed when the District Court refused to consider the merits of the plan submitted by the school board. We have then the following sequence of events: an appeal pending in this court, a dismissal of the complaint by the District Court, and an additional appeal growing out of action in the District Court with respect to the appeal pending. We hold that the pendency of the appeal in this court which

involved the same question as the dismissal order was adequate to preserve the appeal, and that our holding here will render the order of dismissal moot.[4] The case of Dempsey v. Guaranty Trust Company, 7 Cir., 1942, 131 F.2d 103, is not to the contrary as it turned on the fact of a question arising in the District Court under an amended complaint filed after the appeal.

■■ With respect to Glynn County, it is now settled that attendance by Negro students at schools free of discrimination based solely on race is a federal right, and claims of denial of that right may be adjudicated in the federal courts without first exhausting state administrative remedies. McNeese v. Board of Education, 1963, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622; Armstrong v. Board of Education of the City of Birmingham, 5 Cir., 1963, 323 F.2d 333, 336; and Evers v. Jackson Municipal Separate School District, 5 Cir., 1964, 328 F.2d 408. It was thus error to relegate the board to the school administrative procedure statute.

■ It is also urged that the intervention should not have been allowed. We have held that intervention in school cases is not a matter of right but of discretion upon good cause being shown. St. Helena Parish School Board v. Hall, 5 Cir., 1961, 287 F.2d 376, cert. den., 368 U.S. 830, 82 S.Ct. 52, 7 L.Ed.2d 33. The District Court here allowed the intervention and the question presented is whether the facts warrant a holding that there was error in so doing. We conclude that such is not the case.

## II.

### COMMON ISSUES PRESENTED

Left for consideration, and of dominant importance are two questions which are vital in both cases. The first is

4. This is not to say that a District Court should not go forward with a case while some part of it is on appeal. Cf. United States v. Lynd, 5 Cir., 1963, 321 F.2d

26. The fact here is that the dismissal goes to the same question that was and is on appeal.

the question presented by the pleadings of the intervenors in the Savannah case, the evidence adduced on the hearing therein, and by the ruling of the court thereon. The same question is presented by the complaint in the Glynn County case. That question, as posed by the white intervenors and complainants is whether a state is forbidden by the equal protection clause of the Fourteenth Amendment from reasonably classifying its children in schools on the basis of their educational aptitudes because the difference in aptitude is also a racial characteristic. We must add for clarity: "with the result that the schools continue separate as to race."

The District Court answered this question in the negative, on the uncontested facts presented in support of the classification predicate. The conclusion reached was that a reasonable classification within the meaning of the equal protection clause of the Fourteenth Amendment might be secured by division of the schools "on the basis of coherent groups having distinguishable educability capabilities * * *."

On the application to this court for interim relief in the Savannah case, Stell v. Savannah-Chatham County Board of Education, supra, we noted that the District Court permitted the intervention so that proof might be adduced as a factual basis for an effort to ask the Supreme Court to reverse its decision in Brown v. Board of Education, 1954, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873. We also noted that the District Court was bound by the decision of the Supreme Court in Brown. We reiterate that no inferior federal court may refrain from acting as required by that decision even if such a court should conclude that the Supreme Court erred either as to its facts or as to the law. We quoted from Brown as follows:

"We conclude that in the field of public education the doctrine of 'separate but equal' has no place. Separate educational facilities are inherently unequal. Therefore, we hold

that the plaintiffs and others similarly situated for whom the actions have been brought are, by reason of the segregation complained of, deprived of the equal protection of the laws guaranteed by the Fourteenth Amendment."

We quoted from the decision of the Supreme Court in the second appearance of the Brown case, 1955, 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083 where it was said:

"The courts will require that the defendants make a prompt and reasonable start toward full compliance with our May 17, 1954, ruling. *Once such a start has been made,* the courts may find that additional time is necessary to carry out the ruling in an effective manner."

(Emphasis added)

Thus was the Savannah case ended then, and there it must end now. We do not read the major premise of the decision of the Supreme Court in the first Brown case as being limited to the facts of the cases there presented. We read it as proscribing segregation in the public education process on the stated ground that separate but equal schools for the races were inherently unequal. This being our interpretation of the teaching of that decision, it follows that it would be entirely inappropriate for it to be rejected or obviated by this court. See Brown v. School District No. 20, Charleston, E.D.S.C., 1964, 226 F.Supp. 819, affirmed, 4 Cir., 1964, 328 F.2d 618; Youngblood v. Board of Public Instruction of Bay County, N.D.Fla., 1964, 230 F.Supp. 74; and see also our opinion this date rendered in Armstrong v. Board of Education of City of Birmingham, 5 Cir., 333 F.2d 47.

In this connection, it goes without saying that there is no constitutional prohibition against an assignment of individual students to particular schools on a basis of intelligence, achievement or other aptitudes upon a uniformly administered program but race must not

be a factor in making the assignments. However, this is a question for educators and not courts.

 The real fallacy, Constitution-wise, of the classification theory is that many of the Negro pupils overlap many of the white pupils in achievement and aptitude but are nevertheless to be segregated on the basis of race. They are to be separated, regardless of how great their ability as individuals, into schools with members of their own race because of the differences in test averages as between the races. Therein is the discrimination. The individual Negro student is not to be treated as an individual and allowed to proceed along with other individuals on the basis of ability alone without regard to race.

### III.

We come now to the other question and one which is of prime importance in these cases. What is to be done by the District Court and by the respective school boards on remand? To what relief are the Negro plaintiffs in the Savannah case and the Negro intervenors in the Glynn County case entitled? It is undisputed that as of the date of District Court orders under appeal both school systems were being operated on a segregated basis.

Our recent decision in Calhoun v. Latimer, 5 Cir., 1963, 321 F.2d 302, contains a discussion of the plans of desegregation in use in Atlanta, New Orleans, Houston, and Pensacola. There are other plans in use in other school systems. Many contain the gloss of pupil assignment procedures, generally the progeny of the Alabama statute approved as constitutional on its face in Shuttlesworth v. Birmingham Board of Education, N.D. Ala., 1958, 162 F.Supp. 372, affirmed, 358 U.S. 101, 79 S.Ct. 221, 3 L.Ed.2d 145.

 Desegregation then being the order of the day, the only question left in the usual case, and this includes these cases, concerns the manner in which it is to be accomplished, and the time allowed for that purpose. Minimal standards were invoked in the beginning—a prompt and reasonable start, as stated, supra, in second Brown. And as we noted in Davis v. Bd. of School Com'rs of Mobile County, 5 Cir., 1963, 318 F.2d 63, the time available for transition from a segregated to a desegregated school system is, with the passage of years since the Brown decisions, becoming more sharply limited. The Supreme Court in Goss v. Board of Education of the City of Knoxville, Tennessee, 1963, 373 U.S. 683, 83 S.Ct. 1405, 10 L.Ed.2d 632; and Watson v. City of Memphis, 1963, 373 U. S. 526, 83 S.Ct. 1314, 10 L.Ed.2d 529, made this abundantly clear. Then, the Supreme Court in remanding Calhoun v. Latimer, supra, to the District Court for an appraisal of the present Atlanta plan for desegregation stated:

"Although Atlanta's commendable effort to effect desegregation is recognized, the District Court on remand, must of course, test the entire Atlanta plan by the considerations discussed in Watson v. City of Memphis, 373 U.S. 526, 529, 83 S. Ct. 1314, 1316, 10 L.Ed.2d 529; Goss v. Board of Education, 373 U.S. 683, 83 S.Ct. 1405, 10 L.Ed.2d 632, and Griffin v. County School Board of Prince Edward County, [375 U.S. 391] 84 S.Ct. 400 [11 L.Ed.2d 409], decided subsequent to the District Court's approval of the plan. In Goss, supra, 373 U.S. at 689, 83 S.Ct. at 1409, we said:

" '[W]e are not unmindful of the deeprooted problems involved. Indeed, it was consideration for the multifarious local difficulties and "variety of obstacles" which might arise in this transition that led this Court eight years ago to frame its mandate in Brown in such language as "good faith compliance at the earliest practicable date" and "all deliberate speed." Brown v. Board of Education, 349 U.S., at 300, 301, 75 S.Ct. [753],

at 756 [99 L.Ed. 1083]. Now, however, eight years after this decree was rendered and over nine years after the first Brown decision, the context in which we must interpret and apply this language to plans for desegregation has been significantly altered. Compare Watson v. City of Memphis, supra.' " Calhoun v. Latimer, 1964, 84 S.Ct. 1235, 1236.

The import of the Supreme Court's views, which in this instance accord with what this court said in the Mobile case, supra, must now be effectuated in these cases. This means that desegregation on the basis of one grade per year over a twelve year course is no longer satisfactory. The decision of this court in Calhoun v. Latimer, supra, points out that the second Brown decision as well as Cooper v. Aaron, 1958, 358 U.S. 1, 78 S.Ct. 1401, 3 L.Ed.2d 5, made it plain that while the implementation of the constitutional principles which make the elimination of racial discrimination in public education necessary might entail some delay, in all events the burden was to rest upon the school boards to establish that:

"* * * such time [delay] is necessary in the public interest and is consistent with good faith compliance at the earliest practicable date. To that end, the courts may consider problems related to administration, arising from the physical condition of the school plant, the school transportation system, personnel, revision of school districts and attendance areas into compact units to achieve a system of determining admission to the public schools on a nonracial basis, * * *."

Then, on the same subject matter, the court in Cooper v. Aaron, supra, pointed out that the District Court should scrutinize the programs of school authorities " * * * to make sure that they [have] developed arrangements pointed toward the earliest practicable completion of desegregation, and had taken appropriate steps to put their program into effective operation. * * *"

The impossibility of the burden of now sustaining a twelve year plan is not a new principle. This court has rejected a grade a year plan on at least three occasions. Bush v. Orleans Parish School Board, 5 Cir., 1962, 308 F.2d 491, (five grades during first two years and one grade per year thereafter); Miller v. Barnes, 5 Cir., 1964, 328 F.2d 810; and Gaines v. Dougherty County Board of Education, 5 Cir., 1964, 329 F.2d 823. In these latter two cases a beginning in two grades was required. The third and sixth circuits have refused to approve grade a year plans. Evans v. Ennis, 3 Cir., 1960, 281 F.2d 385, application for stay denied, 364 U.S. 802, 81 S.Ct. 27, 5 L.Ed.2d 36, cert. den., 364 U.S. 933, 81 S.Ct. 379, 5 L.Ed.2d 365; and Goss v. Board of Education City of Knoxville, 6 Cir., 1962, 301 F.2d 164, reversed on other grounds, 373 U.S. 683, 83 S.Ct. 1405, 10 L.Ed.2d 632. Recently the Court of Appeals for the Fourth Circuit rejected a grade a year plan. Jackson v. School Board of the City of Lynchburg, Virginia, 4 Cir., 1963, 321 F.2d 230. Pointing to the language of the Supreme Court in the Knoxville and Memphis cases that court said:

"Guided by these explicit pronouncements, we hold that the 'grade-a-year' plan, promulgated by the Lynchburg School Board, for initial implementation eight years after the first Brown decision, cannot now be sustained."

It must be added that the Supreme Court in the remand of Calhoun v. Latimer, supra, directed that a grade a year plan, eight years from completion, should be reappraised by the District Court.

It clearly then is the lot of the District Courts, where school boards do not voluntarily follow the Constitution with relation to school operations, and once suits are filed in the District Court, to impose the burden on the school boards of justifying delay in the required full implementation of the constitutional

rights involved. This likewise applies during any period of transition since the District Courts are to retain jurisdiction during that period and changed conditions may indicate a change in plan.

 Whether a future start in one grade will be found consistent with our holdings in Miller v. Barnes, supra; and James v. Dougherty County Board of Education, supra, need not be decided. We can envision circumstances where a limited beginning may be indicated in a school system or a particular division of a system such as elementary, or junior high or high school, but a delay of more than two years for desegregating the grades of any such division would require strict proof in carrying the burden. This is not to rule out justifiable delays based on good and sufficient considerations within the scope of the traditional exercise of the equity power, but any plan hereafter promulgated must be carefully inquired into by the District Court with close attention being paid to the burden of proof that is on the school board to justify delay. And such justification may not rest on community hostility or recalcitrance. See the second Brown decision where the court said that "* * * it should go without saying that the vitality of these constitutional principles cannot be allowed to yield simply because of disagreement with them." See also Cooper v. Aaron, supra. All in all, we do not lay down an inflexible rule since delays in varying degree may be justified on the differing factual situations presented, but it must now be recognized that *pro forma*, unsubstantiated delays are no longer acceptable.

 The plan this day decreed for use in the Birmingham and Mobile schools, Armstrong v. Board of Education, supra; and Davis v. Board of School Commissioners of Mobile County, 5 Cir., 333 F.2d 53, is an example of what may be justified by way of delay under circumstances relating to particular cases, considered as they must be, in the light of the evidence applicable to each. This plan allows two years for the desegregation of the three grades of high school,[5] three years for the three grades of junior high, or a total of five years, but at the same time requires the desegregation of one grade per year beginning with the first grade of the elementary schoools. It also requires assignment without regard to race as to each pupil new to the system in grades not reached by the plan. This means the delay in immediate desegregation is applicable only to students presently in school, and that the bi-racial system is not perpetuated as to new students. The stair-step plan will be working from both ends. Five years will be required for high and junior high schools, six years for elementary school, and six years overall because the plan operates—simultaneously from both the high school and elementary ends.

 These requirements as to the first grade and new students are deemed necessary under any plan to commence in the twelfth grade rather than in the first grade. Moreover, a necessary part of any plan is a provision that the dual or bi-racial school attendance system, i. e., separate attendance areas, districts or zones for the races, shall be abolished contemporaneously with the application of the plan to the respective grades when and as reached by it. Bush v. Orleans Parish School Board, supra.

We have said this is as a frame of reference for the school boards here, and for the District Court in the further handling of these cases. Although the specifics of plans are not now before us, our belief is that such is required by good judicial administration. School desegregation cases present vexing problems in many instances to the federal courts on all levels and some modicum of uniformity through minimal standards would now appear to be in order.

 Another essential in any plan submitted has to do with transfers

---

5. One year has already elapsed, during which the twelfth grade was desegregated.

and assignments. The rule is now firmly established in this circuit, Gibson v. Board of Public Instruction of Dade County, Fla., 5 Cir., 1959, 272 F.2d 763; Evers v. Jackson Municipal Separate School District, supra, that desegregation must be accomplished in the context of all inhibitions, legal or otherwise, serving to enforce segregation having been removed to the extent that Negro pupils are afforded a reasonable and conscious opportunity to apply for admission to any school for which they are otherwise eligible without regard to their race or color, and to have that choice fairly considered by the enrolling authorities. This is the first step. The school boards must give timely notice of this fact, and in such manner and terms as to bring home to Negro students notice of the rights that are to be accorded them. Cf. the notice given in Augustus v. Board of Public Instruction of Escambia County, 5 Cir., 1962, 306 F.2d 862.

Then in Calhoun v. Latimer, supra, we struck down the testing criteria which had been a part of the Atlanta plan, such as personality interviews to determine probable success or failure of Negro applicants in the schools to which transfer and assignment was sought. We held that no standard requiring that an applicant score a grade on scholastic ability and achievement tests equal to the average of the class in the school to which transfer was sought might be utilized, nor any other requirement used where the same was applied only to Negro students seeking transfer and assignment. Any plan of assignment and transfer must be applied without regard to race in an even handed manner. Onerous requirements such as the notarization of applications for assignment or transfer are not to be condoned.

Left in the Atlanta plan as used for assignment and transfer was only the choice of a school by the pupil, and availability of space in the school chosen, with priority where space for all is not available to be based on proximity of residence to school. This freedom of choice, with schools no longer being designated as white or Negro, in the grades to which the plan of desegregation has reached means that each child in the system may attend the school he chooses to attend, without regard to race so long as space is available in the school, and where it is not available to all it is to be awarded on the basis of the proximity of the residence of the pupil to the school. See Armstrong v. Board of Education, supra, this day rendered.

In sum then we hold that the District Court erred in failing to grant the preliminary injunction in the Savannah case. The order of dismissal must be vacated to give effect to the mandate of this court in this regard. The plan that was submitted by that school board pursuant to the injunction issued by the District Court at our request is not now before this court for consideration inasmuch as it must first be considered by the District Court. There it must be judged in the framework of what we have had to say in this opinion with respect to minimum standards and burden of proof. The terms of an amended injunction which must be entered shall include a requirement for prompt submission by the defendants in that case of a plan of desegregation in keeping with the principles here set out to the end of implementing the constitutional right of appellants to attend public schools free of racial discrimination. That plan may be no less in transfer and assignment scope than the present Atlanta plan or the similar one approved by this court in Gaines v. Board of Education of Dougherty County, supra, or the option plan of New Orleans and Houston. See Bush v. Orleans Parish School Board, supra; and Ross v. Dyer, 5 Cir., 1962, 312 F.2d 191. It may be no less in time allowed for accomplishment than that allowed today under our decision in the Birmingham and Mobile cases, supra, provided, of course, the boards here are able to justify such delay for the present, or on any future complaint that the speed of the plan should be increased or decreased.

Both Savannah, and Glynn County have already begun desegregation with

**66**

plans commencing in the twelfth grade. What we have said with regard to time is limited to such plans, and in no way includes plans that commence with the first grade. Those will be for another day and on their own facts, just as any delay here must stand on the case presented to the District Court on remand. We add the caveat that we are dealing here with plans that are in some degree now underway, and not with a plan that may start in some future year.

## IV.

## CONCLUSION

In the Glynn County case, we affirm as to the order of the District Court allowing the intervention. There also was no error in the requirement by the District Court under the then prevailing circumstances that a plan of desegregation be submitted. We reverse so much of that order as required the formulation of that plan under Georgia Code § 32–910, supra, and the attendant requirement that the school board proceed as a school court. We vacate the entire order requiring that a plan be submitted, and also the injunction issued at our direction against that school board. We do this on the assumption that the school board will promptly go forward, as it attempted to do in the beginning, with a voluntary plan of desegregation, but without prejudice to the rights of the intervenors in that case to seek further relief in the District Court in the event the school board should fail and refuse to go forward in a manner consistent with what we have said in this opinion. The District Court is to retain jurisdiction of these cases during the period in which desegregation is to be accomplished.

As to Savannah (No. 20,557), the judgment is reversed and the case remanded for further proceedings not inconsistent herewith; as to Glynn County (No. 20,871) the judgment is affirmed in part, reversed in part, vacated in part, and remanded for further proceedings not inconsistent herewith.