**Eva ALLEN et al.**

v.

**COUNTY SCHOOL BOARD OF PRINCE EDWARD COUNTY, etc., et al.**

**Civ. A. No. 1333.**

United States District Court
E. D. Virginia,
Richmond Division.

June 14, 1961.

See also D.C., 28 F.R.D. 367.

S. W. Tucker, Emporia, Va., Robert L. Carter, New York City, Oliver W. Hill, Richmond, Va., for plaintiffs.

St. John Barrett, Asst. U. S. Atty. Gen., for the Attorney General of the United States.

J. Segar Gravatt, Blackstone, Va., Denny, Valentine & Davenport, Richmond, Va., Frederick T. Gray, Atty. Gen. of Virginia, for defendants.

Joseph S. Bambacus, U. S. Atty., Richmond, Va., for the United States.

LEWIS, District Judge.

The United States seeks to intervene as a party plaintiff in the above captioned matter. A better understanding of the question now before the Court necessitates a brief history of the main action.

In compliance with the decision rendered in Brown v. Board of Education, 1955, 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083, an order was entered in this suit under date of November 26, 1958, providing, among other things, that the defendants proceed promptly with the formulation of a plan to comply with the order of this Court heretofore entered enjoining them from discriminating against the plaintiffs in admission to the public schools of the County solely on account of race. Said defendants were further directed to report to the Court on or before January 1, 1959, the progress made in the formulation of such plan and were further directed to comply with the terms of the injunction heretofore entered commencing with the opening of the school year 1965.

The Court of Appeals for the Fourth Circuit under date of May 5, 1959, 266 F.2d 507, reversed this Court and remanded the case, with directions to issue an order in accordance with that opinion, which provided, among other things, that the defendants be enjoined from any action that regulates or affects on the basis of color the enrollment or education of the infant plaintiffs, or any other Negro children similarly situated, to the high schools operated by the defendants in the County, and to take immediate steps in this regard to the end that the applications be considered so as to permit the entrance of qualified persons into the white schools in the school term beginning September 1959. No decree was entered pursuant to the mandate of the Court of Appeals until the petitioners presented an appropriate order for entry therein on April 22, 1960, pertinent portions of said order being:

"The defendants are restrained and enjoined from any action that regulates or affects on the basis of race or color the admission, enrollment or education of the infant plaintiffs, or any other Negro chil-

dren similarly situated, to the high schools operated by the defendants in the County and that the defendants receive and consider the applications of such persons for admission to such high schools without regard to race or color.

"That the defendants make plans for the admission of pupils in the elementary schools of the County without regard to race or color and to receive and consider applications to this end at the earliest practical day."

The Court and all counsel of record had knowledge of the fact that the public schools of Prince Edward County were closed prior to the entry of the said order.

Under date of July 8, 1960, counsel for the plaintiffs filed a motion to intervene additional plaintiffs; a motion for leave to file a supplemental complaint and to add additional defendants; to all of which motions the defendants objected. On September 16, 1960, the said motions were granted. By consent decree, the time for the filing of responsive pleadings to the supplemental complaint was extended to October 24, 1960.

The defendants filed motions to dismiss the supplemental complaint. Prior to the hearing of said motions, the plaintiffs on January 13, 1961, filed a motion for leave to amend their supplemental complaint and to add the Board of Supervisors of Prince Edward County and J. W. Wilson, Jr., Treasurer of Prince Edward County, as additional defendants.

Upon consideration of the said motions the Court under date of April 24, 1961, granted plaintiffs leave to amend their supplemental complaint and to add the Board of Supervisors of Prince Edward County and J. W. Wilson, Jr., Treasurer of Prince Edward County, as additional defendants. The order fixed May 1, 1961, as the last date for the plaintiffs to offer any further amendments to their pleadings and as the last date for the defendants to file any mo-

tions in response thereto. The hearing of the motions thus filed was set for May 8, 1961.

Under date of April 26, 1961, the United States, by Robert F. Kennedy, Attorney General, and Joseph S. Bambacus, United States Attorney for the Eastern District of Virginia, moved the Court for leave to intervene as a plaintiff in this action and to file a complaint in intervention, and to add as parties defendant the Prince Edward School Foundation, a corporation, the Commonwealth of Virginia, and Sydney C. Day, Jr., Comptroller of Virginia.

The United States, in support of its motion to intervene, alleges that intervention

"is necessary in order to prevent the circumvention and nullification of the prior orders of this Court and to safeguard the due administration of justice and the integrity of the judicial processes of the United States.

"The claim of the United States, as set forth in the complaint in intervention, involves questions of both law and fact in common with those raised by the amended supplemental complaint filed by the plaintiffs herein."

The motion was made under and pursuant to Sections 309 and 316, Title 5 U.S.C.A., and Rule 24 of the Rules of Civil Procedure, 28 U.S.C.A. The United States requested a hearing, on its motion to intervene, on May 8, 1961. The motion was then heard.

All of the defendants to this suit and the additional parties sought to be made defendants objected to the intervention of the United States as a party plaintiff. The plaintiffs supported the Government's position. The matter was fully and ably argued by counsel for all parties and the written briefs have been carefully considered by the Court.

Rule 24 of the Rules of Civil Procedure provides for intervention of right and permissive intervention.

Rule 24. (a) "Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the representation of the applicant's interest by existing parties is or may be inadequate and the applicant is or may be bound by a judgment in the action; or (3) when the applicant is so situated as to be adversely affected by a distribution or other disposition of property which is in the custody or subject to the control or disposition of the court or an officer thereof."

It is therefore necessary to first determine whether or not the United States, as a matter of right, may intervene in this suit as a party plaintiff. If it has such a right, its application therefor must be "timely" filed; the rule specifically so provides. The able Assistant Attorney General of the United States, both in his oral argument and in his written brief, totally ignored this requirement of the rule. The Government offered no excuse or extenuating circumstances justifying a delay of more than a year in the filing of the Government's motion in intervention.[1]

In view of the necessity of scheduling an early hearing on the merits of the plaintiff's amended supplemental complaint and the unexplained delay on the part of the Government in filing its motion in intervention, there is a serious question in the Court's mind as to whether or not the motion was "timely" filed.

The Government does not contend that it has a statutory right to intervene in this suit. However, the Court's attention has been called to the fact that several bills have been introduced in the Congress of the United States and some are now pending, specifically granting unto the Attorney General of the United States the right to intervene in suits of this type as a party plaintiff. None of these bills, however, have been enacted into law. Thus to grant intervention in this case, in the absence of statutory authority, would appear to be contrary to the intent of Congress. This, however, the Court need not decide, because the Attorney General relies primarily on Section (2) of Rule 24(a).

He contends:

"The interest of the United States, which is unique, is not represented by any of the existing parties. The plaintiffs seek to secure their constitutional rights, but the United States seeks to preserve its judicial processes against impairment by obstruction or circumvention. These clearly are distinct interests. Moreover, the due administration of justice is a sovereign interest that cannot properly be entrusted for safeguarding to private parties. The representation of the interest of the United States by the plaintiffs is plainly inadequate."

The Attorney General further contends:

"The United States, by its complaint in intervention, has joined the State of Virginia in order to secure complete relief in this action, in which the United States contends that the State is circumventing this Court's order by action which is unlawful in that it denies to the residents of Prince Edward County the equal protection of the laws. But the State of Virginia can be made a defendant only by the United States, since the Eleventh Amendment of the United States Constitution bars the plaintiffs from suing a State without its consent."

In support of this contention, the Attorney General seeks to parallel the

---

**1.** The order of this Court which they allege as being circumvented, was entered April 22, 1960. The Government's motion in intervention was filed April 26, 1961.

situation in Prince Edward County with the former situation in Little Rock and New Orleans. The facts in these cases do not justify such a comparison. In the latter cases, open defiance of Federal Court orders was obvious. In Virginia this complex problem has been and is being solved in a lawful and proper manner through the courts. There has been no known defiance of this Court's orders by either the State of Virginia or the County of Prince Edward. Even under the situation then existing in Little Rock and New Orleans, the Attorney General, insofar as this Court knows, did not move to intervene as a party plaintiff for any purpose. To the contrary, the Government's participation in those cases was at the Court's invitation as amicus curiae.[2]

■ The precise question before this Court, in the case under consideration, is whether or not the defendants, or any of them, are violating or circumventing its orders. To find the defendants guilty of so doing without a hearing would be a clear violation of the defendants' constitutional rights. That, this Court will not do. The United States has no right to intervene as a party plaintiff in this case on that ground until this Court has first determined that its orders are in fact being violated or circumvented.

■ The Attorney General further argues, however, that the plaintiffs are unable to represent adequately the interest of the United States because the plaintiffs can not make the Common-

wealth of Virginia a party defendant by virtue of the Eleventh Amendment to the United States Constitution.[3] Surely, that is not the "interest" referred to in the statute. If the United States has a cause of action against the Commonwealth of Virginia, in this or any other type of suit, the right to maintain that cause of action is not predicated upon the right to intervene as a party plaintiff in a suit instituted by private plaintiffs seeking to secure their constitutional rights.

■ The Attorney General cites numerous cases in support of his contention that the United States by virtue of its national sovereignty has a sufficient general interest in this case to be permitted to intervene of right. Suffice it to say that none of the cited cases are sufficiently in point with the facts in this case to sustain his contention.

"It is well settled that the only interest which will entitle a person to the right of intervention in a case is a legal interest as distinguished from interests of a general and indefinite character which do not give rise to definite legal rights." See Jewell Ridge Coal Corp. v. Local No. 6167, etc. [D.C.], 3 F.R.D. 251. See also Radford Iron Co. Inc. v. Appalachian Electric Power Co. [4 Cir.], 62 F.2d 940.

■ The Attorney General next contends Rule 24 must be considered in connection with Title 5, Sections 309 and 316,[4] U.S.C.A. With this we do not dis-

2. A party plaintiff assumes the role of a party litigant. It is allowed to file pleadings, offer evidence, file briefs and seek relief. It has a right to reasonably control its side of the case; amicus curiae is technically "a friend of the Court", as distinguished from an advocate. It arises only via an ex parte order of the Court and fully advises the Court on the law in order that justice may be attained.

3. See United States v. State of Texas, 143 U.S. 621, 12 S.Ct. 488, 36 L.Ed. 285; United States v. State of California, 332 U.S. 19, 67 S.Ct. 1658, 91 L.Ed. 1889.

4. Section 309. "Conduct and argument of cases by Attorney General and Solicitor General. Except when the Attorney General in particular cases otherwise directs, the Attorney General and Solicitor General shall conduct and argue suits and writs of error and appeals in the Supreme Court and suits in the Court of Claims in which the United States is interested, and the Attorney General may, whenever he deems it for the interest of the United States, either in person conduct and argue any case in any court of the United States in which the United States is interested, or may direct the

agree. Clearly, these statutes give very broad authority to the Attorney General to institute and conduct litigation in order to establish and safeguard Government rights and properties.

In our view of the matter, having reached the opinion that the United States does not have such an "interest" in the instant case as is required by Rule 24(a), these statutes are not applicable, for they likewise require the United States to have such an "interest".

Therefore this Court is of the opinion that the United States has no absolute right of intervention in this suit under Rule 24(a).

The Attorney General further argues, however, that if the Court be of such opinion, the United States, in any event, ought to be permitted to intervene under Rule 24(b) Permissive Intervention, which reads as follows:

"Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. When a party to an action relies for ground of claim or defense upon any statute or executive order administered by a federal or state governmental officer or agency or upon any regulation, order, requirement, or agreement issued or made pursuant to the statute or executive order, the officer or agency upon timely application may be permitted to intervene in the action. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties."

The granting of the motion under this section lies within the sound discretion of the Court and in so determining the Court must consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

In the judicial exercise of this discretion it is deemed proper that the allegations of the proposed complaint of intervention be carefully examined and compared with the allegations of the amended supplemental complaint now pending before this Court.

The material allegations of the complaint in intervention are summarized as follows:

Section 129 of the Constitution of Virginia requires that the General Assembly establish and maintain a system of public free schools throughout the state; prior to June 1959, free public schools were being maintained in Prince Edward County, educating approximately 1,700 Negro and 1,400 white pupils; segregated schools were then being maintained; under date of May 17, 1954, the Supreme Court of the United States held that state operation of racially segregated schools in Prince Edward County was unconstitutional; in July 1954, the Supervisors of Prince Edward County expressed opposition to the operation of racially unsegregated public schools; in July 1955, this Court entered an order requiring that the public schools in Prince Edward County be racially desegregated with all deliberate speed; in May 1956, the Board of Supervisors of Prince Edward County, in response to a request of 4,000 white citizens, adopted a resolution declaring it to be the policy of the Board that no county tax levy should be made for operation of public schools on a non-segregated basis; on May 5, 1959, the Court of

Solicitor General or any officer of the Department of Justice to do so."

Section 316. "Interest of United States in pending suits. The Solicitor General, or any officer of the Department of Justice, may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in any suit pending in any of the courts of the United States, or in the courts of any State, or to attend to any other interest of the United States."

Appeals for the Fourth Circuit directed the entry of an order requiring that the public schools of Prince Edward County be operated on a racially non-discriminatory basis, commencing in the fall of 1959; Articles of Incorporation were executed on May 26, 1959, for the creation of Prince Edward School Foundation for the purpose of operating elementary and high schools in Prince Edward County for the education of children of the white race exclusively; on June 2, 1959, the Board of Supervisors of Prince Edward County did not levy taxes for the operation of public schools for the school year 1959–60; public schools in Prince Edward County were not opened for the fall semester of 1959 and have not been opened since that date; the Prince Edward School Foundation began operating in September 1959; approximately 1,400 white children attended; no tuition or fees were charged for educating these students; the Foundation obtained its funds through contributions for the school year 1959–60; on April 22, 1960, this Court entered an order enjoining the defendants from any action that regulated or affected the enrollment or education of Negro children on the basis of race or color to the public high school of Prince Edward County and further requiring the defendant to make plans for the admission of pupils to the elementary schools of the County without regard to race or color at the earliest practical date; in June 1960, the Board of Supervisors adopted a budget including funds for educational purposes, but without providing funds to permit operation of public schools; in July 1960, the Board of Supervisors adopted an ordinance requiring the County Treasurer to allow a certain credit against real estate and personal property taxes on account of any contributions made to a certain private school located in Prince Edward County; the Board of Supervisors on the same day adopted a tuition grant plan of not less than $100 per year per child who was enrolled in a private non-sectarian school within the County or in a public school within the state; that the only non-sectarian private school within the County was the Prince Edward School Foundation; $58,000 in tax credits have been granted on account of contributions to the Prince Edward School Foundation; the Foundation for the school year 1960–61 charged a $240 tuition for elementary schools and a $265 tuition for high schools; tuition grants from the state and county amount to $225 for elementary students and $250 for high school students; in December 1960, a number of Negro residents petitioned the Board of Supervisors to reopen the public schools of the County; this request was denied; since June 1959, the defendants have failed and refused to maintain free public schools in Prince Edward County; the purpose and effect has been and is to prevent the operation of public schools in compliance with the orders of this Court on a racially non-discriminatory basis; since June 1959, the defendants have maintained the schools of the Prince Edward School Foundation for the education of white children residing in Prince Edward County; since that date no schools have been operated in Prince Edward County for Negro children; a system of free public schools is being maintained elsewhere in the State of Virginia; the failure and refusal of all of the defendants, including the State, to maintain free public schools in Prince Edward County, while such a system is being maintained in the rest of the State, denies to the Negro residents of the County, rights secured under the Fourteenth Amendment to the Constitution.

The complaint in intervention prays that this Court enter an order enjoining the defendants from failing or refusing to maintain free public schools in Prince Edward County; for an order enjoining the defendants from paying tuition grants to students attending Prince Edward School Foundation so long as public schools are closed; for an order enjoining

certain defendants from allowing any credit to taxpayers on account of contributions to the Prince Edward School Foundation, during the time public schools are closed in Prince Edward County; for an order enjoining all the defendants, including the State of Virginia, from the payment of any funds of the State for the maintenance of public schools anywhere in Virginia during such period as public schools are closed in Prince Edward County.

The allegations of the amended supplemental complaint are substantially the same except that paragraph 16 of the amended supplemental complaint alleges that the County School Board of Prince Edward County is considering and contemplating the conveyance, lease or transfer of the public schools and public school property to some private corporation, etc.

The amended supplemental complaint does not, however, seek to make Prince Edward School Foundation, the State of Virginia, or its Comptroller General parties defendant.

The prayers of the amended supplemental complaint request this Court to enter an order enjoining the present defendants (not the State of Virginia) from refusing to maintain free public schools in Prince Edward County; from expending public funds for the direct or indirect support of any private school which excludes the infant plaintiffs and others similarly situated by reason of race; from crediting any taxpayer with money paid or contributed to any private school which excludes the infant plaintiffs and others similarly situated for the reason of race; from conveying, leasing or otherwise transferring title, possession or operation of public schools and facilities incidental thereto to any private corporation.

It is apparent from a comparison of the complaint in intervention with the amended supplemental complaint that the material difference therein is that the United States in its complaint in intervention seeks to make the Prince Edward School Foundation, the State of Virginia and its Comptroller General parties defendant and to have this Court enter an order enjoining the State of Virginia from failing or refusing to maintain free public schools in Prince Edward County and enjoining the State from the expenditure of any of its funds for the maintenance of free public schools throughout the rest of Virginia so long as the free public schools of Prince Edward County remain closed. Such relief, if granted, would be unnecessarily punitive, in that it would require the closing of most, if not all, of the free public schools in Virginia. Whether the means, if legal, justifies the end is questionable, to say the least.

Although the Assistant Attorney General, in his argument before the Court, stated that "it was not the intent of the Government to force the closing of the public schools in Virginia; to the contrary, the purpose of the Government was to force the opening of the schools in Prince Edward County", he refused to delete this prayer from the complaint in intervention, stating "he did not have the authority to so do". Therefore this Court can only conclude, if the Government be permitted to intervene as a party plaintiff, it would urge this Court to enter an order that could jeopardize the education of several hundred thousand Virginia children who have no responsibility whatsoever for the closing of public schools in Prince Edward County.

If this Court were to entertain the complaint in intervention in its present form, it would be necessary for the Court to construe and interpret certain sections of the Constitution of Virginia and laws adopted pursuant thereto pertaining to the maintenance of a system of free public schools in the State of Virginia. Abstinence in state affairs when not in conflict with the United States Constitu-

tion [5] has long been the federal policy. "This now well-established procedure is aimed at the avoidance of unnecessary interference by the federal courts with proper and validly administered state concerns, a course so essential to the balanced working of our federal system. To minimize the possibility of such interference a 'scrupulous regard for the rightful independence of state governments * * should at all times actuate the federal courts,' Matthews v. Rodgers, 284 U.S. 521, 525, [52 S.Ct. 217, 219, 76 L.Ed. 447] as their 'contribution * * * in furthering the harmonious relation between state and federal authority * *.' Railroad Commission [of Texas] v. Pullman Co., 312 U.S. 496, 501 [61 S.Ct. 643, 645, 85 L.Ed. 971]." Harrison v. N. A. A. C. P., 360 U.S. 167, 79 S.Ct. 1025, 1030, 3 L.Ed.2d 1152.

Further, since the complaint in intervention seeks to make the Commonwealth of Virginia a party defendant, thereby making the suit a direct action against the State, it would be necessary, if an injunction were to issue against the State, to convene a three-judge District Court as provided for in Title 28, Section 2281 of the United States Code. These are not questions of law or fact in common with the main action. To the contrary, they are new and independent assertions, which admittedly are not alleged in the amended supplemental complaint. A determination of these questions, whether heard by a three-judge court or by the Supreme Court of Appeals of Virginia, by virtue of the Doctrine of Abstention, will materially delay the adjudication of the private constitutional rights asserted by the individual plaintiffs in the main · action. Further delay would inevitably occur as a result of an appeal to the Supreme Court of the United States, during which interim the "status quo" would be maintained in Prince Edward County.

The Attorney General cites many of the same authorities and arguments in support of permissive intervention as were asserted in support of intervention of right. It is unnecessary to comment further on most of them. However, the Attorney General insists that the Department of Justice is better equipped than the private plaintiffs to represent and defend the national interest. He states:

"It has an experienced legal staff which is conversant with the legal issues involved herein. It also has the investigative facilities of the Federal Bureau of Investigation and the services of the United States Attorney to attend upon the Court. Thus, the public interest in assuring that all the implications of the issues are brought to the attention of the Court warrants the Government's intervention here."

This is undoubtedly true, but whether or not the Department of Justice should use its vast resources as a party litigant in a suit it admits was instituted by private citizens to secure their constitutional rights, is a question this Court need not decide.

■ The Court being of the opinion the granting of intervention will unduly delay and prejudice the adjudication of the rights of the original parties, the motion of the United States to intervene as a party plaintiff and to add as parties defendant the Prince Edward School Foundation, the Commonwealth of Virginia, and Sydney C. Day, Jr., Comptroller of Virginia, is denied.

Counsel for the defendants should prepare an appropriate order, in accord with this opinion, submit it to counsel for plaintiffs and counsel for the United States for approval as to form, and present the same for entry herein.

5. This Court knows of no provision of the United States Constitution which provides that the states shall provide a system of free public education and none has been cited.