Joyce Marie **MOORE** et al., Plaintiffs,

v.

**TANGIPAHOA PARISH SCHOOL BOARD, a Corporation, C. M. Fagan, President, and Dewitt L. Sauls, Superintendent, Defendants.**

Civ. A. No. 15556.

United States District Court
E. D. Louisiana,
New Orleans Division.

Aug. 20, 1968.

Jack Greenberg, Franklin White, New York City, A. P. Tureaud, New Orleans, La., for plaintiffs.

Leonard E. Yokum, Hammond, La., for defendants.

RUBIN, District Judge:

For the fourth time, this court has before it a motion to require the Tangipahoa Parish School Board to afford Negro school children in that parish equal protection of the laws, as interpreted by the United States Supreme Court in *Brown I*.[1] On July 12, 1967, this court issued an order in accordance with the freedom of choice plan approved in *Jefferson County II*.[2] The present motion raises the question of whether that order should be modified because of the recent Supreme Court decision in Green v. County School Board of New Kent County [3] stating that it is the duty of local school boards "to effectuate conversion of a state-imposed dual system to a unitary, nonracial system."

There are approximately 16,500 students in the Tangipahoa Parish public schools; approximately 9,300 students are white and about 7,200 students are Negro. In 1967–68 under the freedom of choice plan ordered by the court in its decree of July 12, 1967, (which is referred to below as The Decree), approximately 300 Negro students chose to attend formerly white schools and no

1. Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954).

2. United States v. Jefferson County Board of Education (5 Cir. 1967), 380 F.2d 385.

3. 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed. 2d 716 (1968).

white students chose to attend formerly Negro schools. Thus, approximately 4.1% of the Negro student population attended school together with white classmates.

The choice period for the 1968–69 school year has been completed. There is no evidence that the students' choice has been in any way improperly restricted. The record contains no evidence that the School Board has failed to perform fully the requirements of The Decree with respect to avoiding any influence on students' choice. [4]

Nevertheless the number of students choosing to attend schools that were formerly attended only by members of the opposite race has declined. This year only 260 Negro students have elected to attend formerly white schools and again no white students chose to attend formerly Negro schools. Thus during the coming year only 3.6% of the Negro student population will attend schools that are not segregated.

Although The Decree called for "positive and affirmative steps" to accomplish faculty desegregation, in the 1967–68 school year no Negro teachers were assigned to teach in formerly white schools and only two white teachers were assigned to teach in formerly Negro schools.

It is apparent that up to now the Tangipahoa Parish freedom of choice plan has not demonstrated the requisite "real

promise of aiding a desegregation program to effectuate conversion of a state-imposed dual system to a unitary, nonracial system." [5]

But no true education can be afforded 16,500 students if their school system is disorganized and chaotic. If the schools are disrupted, if classes cannot be properly planned, and if school transportation cannot be arranged, there can be no effective educational system. Courts, therefore, must at least take into account the administrative problems of operating school systems.

In Tangipahoa Parish, school starts on August 28th, only 13 days after the hearing was concluded.[6] The system has 35 schools, 780 teachers, and 160 school bus routes. Geographically the parish is a large one and it contains a variety of schools, some in rural areas, others in small towns and some in medium sized communities.

In the time presently available, school officials cannot effectively incorporate a major alteration into the program already planned for 1968–69. *Green,* [7] *Monroe* [8] and *Raney* [9] all teach us that, under the Constitution, the primary duty of preparing a plan rests with the school board. Effective implementation of those decisions requires that school officials be given a realistic opportunity to do so, with the admonition of the *Green* decision clearly before them: "The burden on a school board today is

---

4. Paragraph II(b) of the July 12, 1967 Order states: "At no time shall any official, teacher, or employee of the school system influence any parent, or other adult person serving as a parent, or any student, in the exercise of a choice or favor or penalize any person because of a choice made."

5. Green v. County School Board, 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716 (1968).

6. *Green* was not decided until May 27, 1968. Shortly before that, defendant's chief counsel had died. Plaintiff's motion for further relief was filed on June 5, 1968. A hearing was held on June 26, 1968. The defendants were ordered to, and did file, a report by July 15, 1968. Further hearings were held on August

14 and August 15, 1968. Neither party sought any undue delay in bringing this motion to a hearing, and neither is in any way responsible, therefore, for the fact that no major change in the operation of the school system could be feasibly undertaken before the opening of school.

7. Green v. County School Board, 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716 (1968).

8. Monroe v. Board of Commissioners, 391 U.S. 450, 88 S.Ct. 1700, 20 L.Ed.2d 733 (1968).

9. Raney v. Board of Education, 391 U.S. 443, 88 S.Ct. 1697, 20 L.Ed.2d 727 (1968).

to come forward with a plan that promises realistically to work, and promises realistically to work *now*."

However, the freedom of choice plan already in effect, must be fully implemented and given a fair chance to work. Therefore, supplementing the order entered on July 12, 1967, it is Ordered that:

1. *Faculty Assignment*

Since the school board has not achieved substantial desegregation of faculties [10] as required by The Decree:

a) At least one full time classroom teacher of the minority race must be assigned to each school in the Tangipahoa Parish school system with fewer than five teachers.

b) At least two full time classroom teachers of the minority race must be assigned to each school in the Tangipahoa Parish school system with five or more but less than fifteen teachers.

c) At least three full time classroom teachers of the minority race must be assigned to each school in the Tangipahoa Parish school system with fifteen or more teachers.

Since Southeastern Laboratory School is run in conjunction with Southeastern Louisiana College as part of its teacher training program, and makes its own teacher assignments, it is not affected by this portion of the supplemental order.

2. *Report of Faculty Assignments*

The Tangipahoa Parish School Board shall file with the Clerk of this Court by September 1, 1968, a full report of all teacher assignments for the 1968–69 school year including for each school in the system the names, races,

---

10. Paragraph VIII of the July 12, 1967 Order states:

"(a) *Faculty Employment.* Race or color shall not be a factor in the hiring, assignment, reassignment, promotion, demotion, or dismissal of teachers and other prófessional staff members, including student teachers, except that race may be taken into account for the purpose of counteracting or correcting the effect of the segregated assignment of faculty and staff in the dual system. Teachers, principals, and staff members shall be assigned to schools so that the faculty and staff is not composed exclusively of members of one race. Wherever possible, teachers shall be assigned so that more than one teacher of the minority race (white or Negro) shall be on a desegregated faculty. Defendants shall take positive and affirmative steps to accomplish the desegregation of their school faculties and to achieve substantial desegregation of faculties in as many of the schools as possible for the 1967–68 school year notwithstanding that teacher contracts for the 1967–68 or 1968–69 school years may have already been signed and approved. The tenure of teachers in the system shall not be used as an excuse for failure to comply with this provision. The defendants shall establish as an objective that the pattern of teacher assignment to any particular school not be identifiable as tailored for a heavy concentration of either Negro or white pupils in the school.
* * *

(b) *Dismissals.* Teachers and other professional staff members may not be discriminatorily assigned, dismissed, demoted, or passed over for retention, promotion, or rehiring, on the ground of race or color. In any instance where one or more teachers or other professional staff members are to be displaced as a result of desegregation, no staff vacancy in the school system shall be filled through recruitment from outside the system unless no such displaced staff member is qualified to fill the vacancy. If, as a result of desegregation, there is to be a reduction in the total professional staff in the school system, the qualifications of all staff members in the system shall be evaluated in selecting the staff member to be released without consideration of race or color. A report containing any such proposed dismissals, and the reasons therefor, shall be filed with the Clerk of the Court, serving copies on opposing counsel, within five (5) days after such dismissal, demotion, etc., as proposed.

(c) *Past Assignments.* The defendants shall take steps to assign and reassign teachers and other professional staff members to eliminate the effects of the dual school system."

and classroom assignments of all teachers in the school whose race is in a minority in that particular school.

3. *Freedom of Choice Notification*

To further implement paragraphs II(d) [11] and III [12] of The Decree, the Tangipahoa Parish School Board shall immediately give public notice as contemplated by paragraph II(e) [13] of

The Decree that:

a) Any student who has not exercised a choice of schools for the 1968–69 school year may make such a choice of any school in the system at any time before the commencement of school for the 1968–69 school year, and any student who has not exercised his choice of school within a week after school opens shall be assigned to the school nearest his home where space is available under standards for determining available space which shall be applied uniformly throughout the system.

b) All new students are required to exercise a choice of schools before or at the time of enrollment. Where there is no pre-registration procedure for newly entering students, copies of the choice forms shall be available at the office of the superintendent and at each school during the time school is usually open.

c) The public notice required by this supplemental order shall contain the statement "No school will have a faculty composed entirely of teachers of a single race."

4. *Freedom of Choice Forms*

Choice forms shall be made available by the school board within 48 hours after this order is signed and shall remain available through the first week of school at the office of the Superintendent of Schools, the office of the Board of Education, and the Principal's office in each school in the Tangipahoa Parish school system.

11. Paragraph II(d) of the July 12, 1967 Order reads as follows:

"(d) *Mandatory Exercise of Choice.* A failure to exercise a choice within the choice period shall not preclude any student from exercising a choice at any time before he commences school for the year with respect to which the choice applies, but choice may be subordinated to the choices of students who exercised choice before the expiration of the choice period. Any student who has not exercised his choice of school within a week after school opens shall be assigned to the school nearest his home where space is available under standards for determining available space which shall be applied uniformly throughout the system."

12. Paragraph III of the July 12, 1967 Order reads as follows:

"PROSPECTIVE STUDENTS

Each prospective new student shall be required to exercise a choice of schools before or at the time of enrollment. All such students known to defendants shall be furnished a copy of the prescribed letter to parents, and choice form, by mail or in person, on the date the choice period opens or as soon thereafter as the school system learns that he plans to enroll. Where there is no pre-registration procedure for newly entering students, copies of the choice forms shall be available at the Office of the Superintendent and at each school during the time the school is usually open."

13. Paragraph II(e) of the July 12, 1967 Order reads as follows:

"(e) *Public Notice.* On or within a week before the date the choice period opens, the defendants shall arrange for the conspicuous publication of a notice describing the provisions of this decree in the newspaper most generally circulated in the community. The text of the notice shall be substantially similar to the text of the explanatory letter sent home to parents. Publication as a legal notice will not be sufficient. Copies of this notice must also be given at that time to all radio and television stations located in the community. Copies of this decree shall be posted in each school in the school system and at the Office of the Superintendent of Education."

### 5. *Preference in Assignment*

In accordance with paragraph II(d) of The Decree "except with the approval of the Court in extraordinary circumstances, no choice shall be denied for any reason other than overcrowding. In case of overcrowding at any school, preference shall be given on the basis of the proximity of the school to the homes of the students choosing it, without regard to race or color, but preferences may also be given in order to permit siblings living in the same household to attend the same school or to permit a child to attend a school where one of his parents is regularly employed. Standards for determining overcrowding shall be applied uniformly throughout the system."

### 6. *Reports to the Court on Freedom of Choice*

In addition to those reports required to be filed with the Clerk of this Court under The Decree, the School Board shall file with the Clerk of this Court within 15 days after the opening of school a report tabulating by race the number of choice applications and transfer applications received for enrollment in each grade in each school in the system and the number of choices and transfers granted and the number of denials in each grade of each school. The report shall also state any reasons relied upon in denying choice and shall tabulate, by school and by race of student, the number of choices and transfers denied for each such reason.

In addition, the report shall show the percentage of pupils actually transferred from segregated grades or to schools attended predominantly by pupils of a race other than the race of the applicant for attendance during the 1968–69 school year, with comparable data for the 1967–68 school year.

It is of pressing educational importance that the Tangipahoa Parish School Board open its schools on time. It can do so and still implement The Decree as modified by the supplemental order set forth above. As soon as this is accomplished, it must turn its attention to the affirmative duty imposed on it by the Constitution to bring about a school system composed simply of schools. A further hearing will be held on the original motion filed herein as soon as practicable. A pre-hearing conference is set for October 10, 1968 at 8:45 A.M. to consider a date for the hearing and to delineate the matters to be considered at that hearing.