Joyce Marie MOORE, Jerry Moore, and Thelma Louise Moore, Minors, by their Father and Next Friend, M. C. Moore; Bennie Smith, Charles Edward Smith, Shirley Ann Smith, and Earline Smith, Minors, by their Father and Next Friend, Henry Smith, Plaintiffs,

v.

**TANGIPAHOA PARISH SCHOOL BOARD, a Corporation, C. B. Sledge, President, and Dewitt Sauls, Superintendent, Defendants.**

Civ. A. No. 15556.

United States District Court
E. D. Louisiana,
New Orleans Division.
April 3, 1969.

See also, D.C., 290 F.Supp. 96.

RUBIN, District Judge:

In this class action brought by a group of Negro children against the Tangipahoa Parish School Board four years ago, to eliminate racial segregation in its public schools, two groups of white children and their parents now seek to intervene for themselves and all other white children. They contend that the school board does not adequately represent the interests of the white school children, and that they may be adversely affected by any future orders that may be entered by the court. Each group claims that it is more representative of the white parents and children of the Parish than the other, and each contends that it has the right to intervene.

## INTERVENTION OF RIGHT

Rule 24(a) of the Federal Rules of Civil Procedure as amended in 1966 provides in part:

"Upon timely application anyone shall be permitted to intervene in an action: * * * (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."

The Fifth Circuit Court of Appeals has squarely held "[I]ntervention in school cases is not a matter of right * * *." Stell v. Savannah-Chatham County Board of Education, 5 Cir., 1964, 333 F.2d 55, 60; St. Helena Parish School Board v. Hall, 5 Cir., 1961, 287 F.2d 376, cert. denied, 368 U.S. 830, 82 S.Ct. 52, 7 L.Ed.2d

33. *Cf.* Blocker v. Board of Education of Manhasset, New York, E.D.N.Y., 1964, 229 F.Supp. 714; Allen v. County School Board of Prince Edward County, E.D. Va., 1961, 28 F.R.D. 358.

Petitioners correctly point out that the rules for intervention were liberalized in 1966 when Rule 24(a) was amended.[1] Indeed, it has been said by one commentator that the most recent pronouncement of the Supreme Court interpreting the Rule in Cascade Natural Gas Corp. v El Paso Natural Gas Co., 1967, 386 U.S. 129, 87 S.Ct. 932, 17 L.Ed.2d 814,[2] "expand[s] the right to intervene beyond the dreams, or nightmares, of the draftsmen of [the] amendment."[3] This interpretation, however, is unduly apprehensive.

*Cascade* concerned an antitrust action brought by the United States against El Paso Natural Gas Co. The first time this case reached the Supreme Court, the Court directed the District Court "to order divestiture without delay." United States v. El Paso Natural Gas Co., 1964, 376 U.S. 651, 662, 84 S.Ct. 1044, 12 L.Ed. 2d 12. Instead a consent decree was entered and "no divestiture in any meaningful sense [was] directed." Cascade Natural Gas Corp. v. El Paso Natural Gas Co., *supra* 386 U.S. at 131, 87 S.Ct. at 935. Just before entry of the consent decree, a number of competitors and the State of California moved to intervene and intervention was denied by the District Court. The Supreme Court reversed, holding that the intervenors had " 'an interest' in the 'transaction which is the subject of the action,' " and that "the 'existing parties' have fallen far short of representing [their] interests." Cascade Natural Gas Corp. v. El Paso

I. Prior to being amended in 1966, Rule 24(a) provided in part:
"Upon timely application anyone shall be permitted to intervene in an action: * * * (2) when the representation of the applicant's interest by existing parties is or may be inadequate and the applicant is or may be bound by a judgment in the action; or (3) when the applicant is so situated as to be adversely affected by a distribution or other disposition of property which is in the custody or subject to the control or disposition of the court or an officer thereof."

2. *Accord* Nuesse v. Camp, D.C.Cir., 1967, 385 F.2d 694, 701; United States v. First National Bank & Trust Co. of Lexington, Ky., E.D.Ky., 1967, 280 F.Supp. 260, 263.

3. Shapiro, Some Thoughts on Intervention Before Courts, Agencies, and Arbitrators, 81 Harv.L.Rev. 721, 722 (1968). *See* Justice Stewart's dissent in *Cascade.*

Natural Gas Co., *supra* at 136–137, 87 S. Ct. at 937.

■ But while Rule 24 has been liberalized[4] "to overcome objections that conceptual difficulties with the principles of *res judicata* and property rights had made [it] unduly restrictive," [5] it still requires "an absence of adequate representation of the intervenor's interest by existing parties." Atlantis Development Corp. v. United States, 5 Cir., 1967, 379 F.2d 818, 825.

In St. Helena Parish School Board v. Hall, *supra* 287 F.2d at 379, a case similar to this one, the Fifth Circuit Court of Appeals held that the parents of the white students in St. Helena Parish "failed to make the showing that the representation of [their] interest in the litigation was or might be inadequate." Rule 24(a) as amended permits intervention (assuming all other requirements are met) "unless the applicant's interest is adequately represented by existing parties." The rule in effect when the *St. Helena* case was decided asked whether representation by existing parties "is or may be inadequate." It is not entirely clear whether this change in wording "removed the burden on an intervenor to show inadequacy of representation, and shifted the burden onto the party resisting intervention to demonstrate adequacy of representation." Peterson v. United States,

D.Minn., 1966, 41 F.R.D. 131, 133. *See* Exchange National Bank of Chicago v. Abramson, D. Minn., 1968, 45 F.R.D. 97, 103.

■■ But this issue need not be resolved at this time, for it is clear that, whoever bears the burden of proof, the representation of petitioners' interests in this case is adequate under the law. "There is no indication in amended Rule 24(a) or in the Advisory Committee's Note appended thereto, that the substantive meaning of the inadequacy of representation requirement has been changed." Peterson v. United States, *supra.* *Cf.* Nuesse v. Camp, D.C. Cir., 1967, 385 F.2d 694, 702.[6] As the court pointed out in *Peterson,* "The controlling rule is that representation is adequate if there is no collusion between the representative and an opposing party, if the representative does not have or represent an interest adverse to the applicant, and if the representative does not fail in the fulfillment of his duty." [7]

■ None of these conditions have been met in this case. Clearly there has not been collusion between the existing parties. Unlike the *Cascade* case, a settlement between plaintiff and defendant is not under consideration. And, while "interests need not be wholly 'adverse' before there is a basis for concluding that existing representation of a 'differ-

---

4. There are indications that *"Cascade* should not be read as a *carte blanche* for intervention by anyone at anytime," Hobson v. Hansen, D.D.C., 1968, 44 F.R.D. 18, 25, as Justice Stewart feared in his stinging dissent in *Cascade.* The Court in *Cascade* was critical of the Justice Department for "settling" with defendant and of the District Judge for ignoring the Supreme Court's earlier mandate. On remand, it ordered the District Judge removed from the case. A few months later it dismissed *per curiam* an appeal from a denial of a similar intervention in a comparable antitrust case. Lupton Mfg. Co. v. United States, 1967, 388 U.S. 457, 87 S.Ct. 2112, 18 L.Ed.2d 1318, dismissing appeal from United States v. Aluminum Co. of America, E.D.Mo., 1967, 41 F.R.D. 342. *Cf.* United States v. Blue Chip

Stamp Co., C.D.Cal., 1967, 272 F.Supp. 432.

5. Hobson v. Hansen, *supra* 44 F.R.D. at 23. The Revisers of the Rule state that the change "imports practical considerations and the deletion of the 'bound' language similarly frees the rule from undue preoccupation with strict considerations of res judicata." Notes of Advisory Committee on Rules, Rule 24, 28 U.S.C.A. (1968 Supp.).

6. *See generally,* 4 Moore's Federal Practice, ¶24.08, pp. 12–15 (1968 Supp.).

7. See Stadin v. Union Electric Co., 8 Cir., 1962, 309 F.2d 912, 919, cert. denied, 373 U.S. 915, 83 S.Ct. 1298, 10 L.Ed.2d 415; Annot., 84 A.L.R.2d 1419 (1962); 4 Moore's Federal Practice, ¶24.08, p. 35.

ent' interest may be inadequate," [8] a brief examination of the record reveals that there is not the slightest degree of meaningful adversity between defendant school board and the petitioners.[9] All of the substantive defenses raised by the petitioners have been vigorously asserted by the school board.

Finally, petitioners do not seriously contend that the school board failed in its duty to assert the interests that the intervenors support.[10] Counsel for the school board have acted vigorously in this regard. The petitioners have been and still are adequately represented by defendant.

Moreover, as in St. Helena Parish School Board v. Hall, *supra*, "no legally permissible basis for denying the relief sought in the complaint was pleaded of (sic) the intervenor[s]." All of the issues they seek to raise have consistently and emphatically been decided adversely to their position by the Supreme Court and the Fifth Circuit. *See* Green v. County School Board of New Kent County, Va., 1968, 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716; Henry v. Clarksdale Municipal Separate School District, 5 Cir., March 6, 1969, 409 F.2d 682; United States v. Greenwood Municipal Separate School District, 5 Cir., February 4, 1969, 406 F.2d 1086; Graves v. Walton County Board of Education, 5 Cir., September 24, 1968, 403 F.2d 181; Adams v. Mathews, 5 Cir., August 20, 1968, 403 F.2d 181. *See also*, United States v. Jefferson County Board of Education, 5 Cir., 1967, 380 F.2d 385; United States v.

Jefferson County Board of Education, 5 Cir., 1966, 372 F.2d 836.

Rule 24(a) should be liberally interpreted. "Liberality, however, does not equate with rights of indiscriminate intervention." Peterson v. United States, *supra* 41 F.R.D. at 135; Stadin v. Union Electric Co., *supra* 309 F.2d at 918. The motions to intervene as a matter of right under Rule 24(a) are denied.

## PERMISSIVE INTERVENTION BY THE WHITE STUDENTS AND PARENTS AS A CLASS

Alternatively, both applicants seek permissive intervention under Rule 24(b), which provides in part:

"Upon timely application anyone may be permitted to intervene in an action: * * * (2) when an applicant's claim or defense and the main action have a question of law or fact in common. * * * In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties."

■■ Rule 24(b) should be liberally construed. Western States Machine Co. v. S. S. Hepworth Co., E.D.N.Y., 1941, 2 F.R.D. 145. "[B]asically, * * * anyone may be permitted to intervene if his claim and the main action have a common question of law or fact," [11] unless the court in its "sound discretion [determines that] * * * the intervention will unduly delay or prejudice the adjudication of the rights of the

---

8. Nuesse v. Camp, *supra* 385 F.2d at 703. *See also*, Kozak v. Wells, 8 Cir., 1960, 278 F.2d 104, 84 A.L.R.2d 1400.

9. "It is well established that when the interests of applicant and his representative in the outcome of the lawsuit are identical, their interests are not adverse so as to make representation inadequate, even though they may be in conflict in other respects. Interests may be different without being adverse." Peterson v. United States, *supra* 41 F.R.D. at 134.

10. When intervenors claim they are not being adequately represented by the Gov-

ernment, courts should be very hesitant to hold such representation inadequate, "at least in the absence of any claim of bad faith or malfeasance on the part of the Government * * *." Sam Fox Publishing Co. v. United States, 1961, 366 U.S. 683, 689, 81 S.Ct. 1309, 1313, 6 L.Ed. 2d 604; Blocker v. Board of Education of Manhasset, *supra* 229 F.Supp. at 715. *See generally*, 4 Moore's Federal Practice, ¶24.08.

11. Nuesse v. Camp, *supra* 385 F.2d at 704.

original parties." Allen v. County School Board of Prince Edward County, *supra* 28 F.R.D. at 363.

It is beyond dispute that the claims of the white students and parents of Tangipahoa Parish are based on common questions of law and fact with the issues raised in the main action. Nor can it be denied that, as a practical matter, the applicants have an important interest in the outcome of this litigation. All students and parents, whatever their race, have an interest in a sound educational system and in the operation of that system in accordance with the law.

This leaves the question whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties. If not completely untimely, these interventions are certainly not prompt. This suit was filed on May 3, 1965. On June 9, 1965, the school board was first ordered to begin desegregating its public schools. The board was ordered to follow a "freedom of choice" plan in accordance with the requirements of United States v. Jefferson County Board of Education, *supra,* on July 12, 1967. On August 20, 1968, the court found that "the Tangipahoa Parish freedom of choice plan has not demonstrated the requisite 'real promise of aiding a desegregation program to effectuate conversion of a state-imposed dual system to a unitary non-racial system,'" 290 F. Supp. 96, and on October 15, 1968, the school board was ordered to produce a plan that would fully unitize the Tangipahoa Parish school system. 298 F.Supp.

283. It is the hope of both the court and the original parties that this case is in its final stages, and that the court will not have to play a part in the operation of the Tangipahoa Parish schools once the scheduled hearing is completed and an order is issued.

The pendency of this litigation, and the orders entered in it by the court have been widely publicized in parish newspapers, and on local radio stations. Moreover, for two years now every parent and school child has known about this law suit through the "freedom of choice forms" that they were asked to complete and the explanatory letters that were sent out by the school board. Ample opportunity existed for intervention long ago.

Nevertheless, the interests of the white parents and students are substantial, and it appears proper to permit intervention by a group seeking to represent them.[12] But to protect the interests of the original parties and prevent any further delay, the intervention is subject to the following conditions:[13]

1. The intervenors will not be permitted to assert any defenses or claims previously adjudicated by the court.[14]

2. The intervenors may not reopen any question that has previously been decided by the court.[15]

3. The intervenors are admitted for the purpose of reviewing the plan prepared for the unitary operation of the Tangipahoa Parish School System by the Educational Re-

12. *See* Stell v. Savannah-Chatham County Board of Education, 5 Cir., 1964, 333 F. 2d 55, 60.

13. Permissive intervention is often made conditional in order to protect the interests of the existing parties. *See generally,* 4 Moore's Federal Practice, ¶24.13, 24.16; F.R.Civ.P., Rule 23(d) (3).

14. Justice Brandeis pointed out in United States v. California Co-operative Canneries, 1929, 279 U.S. 553, 556, 49 S.Ct. 423, 424, 73 L.Ed. 838, that it is a "settled rule of practice that intervention will not be allowed for the purpose of impeaching a decree already made."

15. "One who intervenes in a suit in equity thereby becomes a party to the suit, and is bound by all prior orders and adjudications of fact and law as though he had been a party from the commencement of the suit." Stell v. Savannah-Chatham County Board of Education, S.D.Ga., 1966, 255 F.Supp. 88, 92. *See* Knowles v. Board of Public Instruction of Leon County, Florida, 5 Cir., 1969, 405 F.2d 1206, 1207; Galbreath v. Metropolitan Trust Co. of California, 10 Cir., 1943, 134 F.2d 569, 570.

source Center on School Desegregation and submitting any objections, modifications, or alternatives they may have in accordance with the requirements of the Constitution and the prior orders of the court.

## REPRESENTATION OF THE INTERVENING CLASS

Each of the two prospective intervenors seeks to represent the white students and parents. The "Durham group" is composed of five students and three parents. All three parents are active members of the Tangipahoa Parish Parent-Teacher Association. One member, Max Durham, Jr., a geologist, is the President of the Hammond High School Parent-Teacher Association. He is familiar with the plan developed by the Educational Resource Center on School Desegregation, and has been instrumental in inviting Center officials to Hammond for a discussion of the plan at a P. T. A. meeting. Another member, Dr. William L. Travis, is a practicing surgeon in Hammond and has also been active in youth affairs. The third member, Robert Jackson, is an insurance agent in Ponchatoula, and, in addition to his P. T. A. affiliation, is President of the Ponchatoula Rotary Club, a Director of the Seventh Ward General Hospital, and a member of the Ponchatoula Planning Commission and the Ponchatoula Chamber of Commerce. The students attend high scool, junior high school, and elementary school in various schools in Tangipahoa Parish.

The other group that seeks to represent the class of white children and parents, the "Pulliam group," consists solely of the three Pulliam children and their father, Claude Pulliam. No further information has been provided about their roles in the community, particularly in educational and youth affairs.

When more than one member of a class seeks to represent the class, the court must determine which applicant's interests are most typical of the interests of the class as a whole and which group will most fairly and adequately protect the interests of the class they represent. F.R.Civ.P., Rule 23(a).[16] Of the applicants before the court, the Durham group best satisfies these criteria.

The Durham group will be permitted to intervene *under the conditions set forth above* for themselves and as representatives of all other white children and parents in Tangipahoa Parish. The motion of the Pulliam group to intervene as representatives of the class of white students and parents is denied.[17]

## PERMISSIVE INTERVENTION BY INDIVIDUAL WHITE STUDENTS AND PARENTS

The members of the Pulliam group also seek permissive intervention for themselves. As the court pointed out in its opinion rendered earlier this week denying defendant school board's motion for an extension of time: "There is no time for further delay in school planning for the next year." Moore v. Tangipahoa Parish School Board, E. D. La., March 25, 1969, 298 F.Supp. 286. Judge Charles Wyzanski said in Crosby Steam Gage & Valve Co. v. Manning, Maxwell & Moore, Inc. (United States, Intervenor), D.Mass., 1943, 51 F.Supp. 972, 973: "Additional parties always take additional time. Even if they have no witnesses of their own, they are the source of additional questions, objections, briefs, arguments, motions and the like which tend to make the proceeding a Donnybrook Fair." There are now three parties and many attorneys in this law-

---

16. For a good discussion, see Weeks v. Bareco Oil Co., 7 Cir., 1941, 125 F.2d 84.

17. As this opinion was being prepared, applicant Pulliam amended his application and added six children and two parents to his party. No information was provided, however, about their leadership roles in the community. After full consideration, the court is still convinced that the Durham group most adequately represents the white children and parents of Tangipahoa Parish.

suit. The interests of the Pulliam group are already represented in the class previously admitted. Their intervention as individuals would serve no useful purpose, and their application for intervention is denied.

The Pulliam applicants can most effectively serve their purposes by filing a brief *amicus curiae*. Such a brief may be filed after the hearing scheduled for April 8, 1969.