**VALE PROPERTIES, LTD., Appellant,**

v.

**CANTERBURY TALES, INC., and Alfred and Minna Pasternak, Appellees.**

**No. 80–205.**

District of Columbia Court of Appeals.

Argued Nov. 18, 1980.

Decided May 18, 1981.

James Edward Ablard, Washington, D. C., with whom Frank H. Strickler, Washington, D. C., was on the brief, for appellant.

Howard J. Ross, Washington, D. C., for appellee Canterbury Tales, Inc.

N. Alfred Pasternak, Washington, D. C., entered an appearance on behalf of appellees Alfred and Minna Pasternak.

Before KERN, HARRIS and FERREN, Associate Judges.

HARRIS, Associate Judge:

Appellant challenges the trial court's denial of its motion, made pursuant to Super. Ct.Civ.R. 24(a)(2), to intervene as of right in *Canterbury Tales, Inc. v. Pasternak*, Civil Action No. 620–80, which was an action for specific performance and injunctive relief arising out of a lease and a proposed exchange of real property. We affirm.

## I

On November 19, 1979, Alfred and Minna Pasternak, the owners and lessors of property located at 1219 Connecticut Avenue, entered into an agreement ("Exchange Agreement") with appellant and with Lion Investment Franconia, Inc. ("Lion"), which sought to effectuate a tax-free exchange of the Pasternaks' property for the Franconia Shopping Center owned by Lion. The agreement called for appellant to purchase Lion's property for cash and then to complete the envisioned trade for the Pasternaks' parcel.

The Pasternaks' performance under the Exchange Agreement was made expressly contingent upon the failure of appellee Canterbury Tales, Inc. ("Canterbury Tales"), the lessee of the Connecticut Avenue property, to exercise an option under the lease. That option afforded Canterbury Tales (which does business under the name of "Britches of Georgetowne") a right to purchase the leasehold by matching a purchase offer accepted by the lessor. In effect, appellant's rights under the Exchange Agreement thus were subordinated to Canterbury Tales' right of first refusal.

The underlying action in which appellant sought to intervene stemmed from a dispute between Canterbury Tales and the Pasternaks regarding the exercise of Canterbury Tales' purchase option. That action was heard on the merits without participation by appellant. The trial judge ruled that Canterbury Tales properly had exercised its option and that Canterbury Tales could attempt to acquire the Connecticut Avenue property by performing appellant's duties under the Exchange Agreement.

In its initial order of January 29, 1980, the trial court required the consent of both appellant and Lion to Canterbury Tales' performance of appellant's duties as outlined in the Exchange Agreement. On Canterbury Tales' motion the following day, however, the trial court amended its order by deleting the condition that appellant consent to Canterbury Tales' assumption of appellant's role in the exchange.[1] The Pasternaks opposed the amendment.

On January 30, 1980, just prior to the trial court's amendment of its initial order, appellant orally moved to intervene in the proceeding to join with the Pasternaks in opposing amendment of the order.[2] The trial court denied appellant's motion, noting its untimeliness. The trial court further indicated that it would have denied appellant's intervention motion, even if properly presented, because appellant had not demonstrated that the parties already before the court would not be prejudiced by its belated intervention. In a February 6, 1980 hearing, appellant stated that it stood willing to renew its application for leave to intervene; the trial court again refused to grant appellant's motion. Appellant contends that the trial court committed reversible error by denying its motion to intervene.

## II

The device of intervention seeks to assure that all apparently concerned entities are involved in a lawsuit to the extent "compatible with efficiency and due process." *Nuesse v. Camp*, 128 U.S.App.D.C. 172, 178, 385 F.2d 694, 700 (1967). Rule 24(a) "should be liberally interpreted." *Moore v. Tangipahoa Parish School Board*, 298 F.Supp. 288, 292 (E.D.La.1969) (discussing Fed.R.Civ.P. 24).[3] "Liberality, however,

1. The trial court evidently concluded that requiring appellant's consent to the substitution of parties would negate the very purpose of its ruling—to allow Canterbury Tales to participate in the three-way exchange of property.

2. *But see* Super.Ct.Civ.R. 24(c), which states in part:

   A person desiring to intervene shall serve a motion to intervene upon the parties as provided in Rule 5. The motion shall state the grounds therefor and shall be accompanied by a pleading setting forth the claim or defense for which intervention is sought.

3. Super.Ct.Civ.R. 24 is identical in all relevant respects to Fed.R.Civ.P. 24, and accordingly we look to federal court decisions as persuasive authority in interpreting it. *Tupling v. Britton*, D.C.App., 411 A.2d 349, 351 (1980); *Campbell v. United States*, D.C.App., 295 A.2d 498, 501 (1972).

does not equate with rights of indiscriminate intervention." *Id.,* at 292, quoting *Peterson v. United States,* 41 F.R.D. 131, 135 (D.Minn.1966).

██ Proposed intervenors as of right must make a timely and sufficient showing to the trial court of the three requirements set forth in Super.Ct.Civ.R. 24(a)(2): (1) an interest in the transaction or property before the court; (2) an impediment to protecting that interest because of the pending action; and (3) inadequate representation of that interest by the existing parties.[4] *Smuck v. Hobson,* 132 U.S.App.D.C. 372, 375–78, 408 F.2d 175, 178–81 (1969); *United States Postal Service v. Brennan,* 579 F.2d 188, 191 (2d Cir. 1978); *Town of North Hempstead v. Village of North Hills,* 80 F.R.D. 714, 715 (E.D.N.Y.1978). Denial of leave to intervene as of right is appealable to this court as a final order. *Calvin-Humphrey v. District of Columbia,* D.C.App., 340 A.2d 795, 798 n.9 (1975). We will reverse only if we conclude that a timely applicant was entitled to intervene as of right. *See Cascade Natural Gas Corp. v. El Paso Natural Gas Co.,* 386 U.S 129, 132–36, 87 S.Ct. 932, 935–37, 17 L.Ed.2d 814 (1967); *United States v. Chesapeake & Potomac Telephone Co.,* D.C.App., 418 A.2d 114, 116 (1980); 7A Wright & Miller, Federal Practice and Procedure § 1923 (1972). *But see Gabriel v. Standard Fruit and Steamship Co.,* 448 F.2d 724, 725 (5th Cir. 1971).

### III

██ A party seeking to intervene must establish its "interest relating to the property or transaction" which is before the

court. Super.Ct.Civ.R. 24(a)(2). While that interest must be "significantly protectable" to require intervention, *Donaldson v. United States,* 400 U.S. 517, 531, 91 S.Ct. 534, 542, 27 L.Ed.2d 580 (1971), we have eschewed any attempt to define precisely the nature of the interest contemplated by the rule. *Calvin-Humphrey v. District of Columbia, supra,* 340 A.2d at 798. Rather, we employ the interest test as a "practical guide" to the handling of lawsuits. *Nuesse v. Camp, supra,* 128 U.S.App.D.C. at 178, 385 F.2d at 700. Appellant had an interest in the disposition of the Connecticut Avenue property, as it was prepared to perform the Exchange Agreement in order to become the owner of that property. Appellant's interest, even though subordinated to Canterbury Tales' option on the property, clearly satisfies the first portion of the intervention rule.

██ Mere interest in the outcome of an action, however, will not alone justify the inevitable cost to judicial economy which intervention entails. *See Calvin-Humphrey v. District of Columbia, supra,* at 799–800. The applicant for intervention must show "that the disposition of the action may as a practical matter impair or impede" its ability to protect its interest. Super.Ct.Civ.R. 24(a)(2). Here appellant failed to meet that burden. While appellant belatedly professed that the underlying action impeded protection of its interests, its failure to timely pursue the available option of intervention belies the immediacy of that concern.[5]

██ Following a timely showing of an applicant's interest in the outcome of an

---

4. Rule 24(a) provides:
   Upon timely application anyone shall be permitted to intervene in an action: ... when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

5. We note that subsequent to the trial court's denial of its intervention motions, appellant filed an action against Canterbury Tales, Lion,

and the Pasternaks. *Vale Properties, Ltd. v. Canterbury Tales, Inc., Lion Investment Franconia, Inc., and Alfred and Minna Pasternak,* Civil Action No. 1890–80 (Superior Court of the District of Columbia, filed Feb. 8, 1980). In that case, appellant is seeking: (1) an order enjoining the Pasternaks and Lion from consummating the exchange; (2) specific performance of the Exchange Agreement; (3) a declaratory judgment that Canterbury Tales' option agreement under the lease with the Pasternaks is void; and (4) damages of $1 million against each defendant.

action and a hindrance of its capacity to safeguard that interest, intervention will be granted "unless the applicant's interest is adequately represented by existing parties." Super.Ct.Civ.R. 24(a)(2). We have recognized the importance of focusing on adequacy of representation, *Calvin-Humphrey v. District of Columbia, supra; see United States v. Chesapeake & Potomac Telephone Co., supra,* 418 A.2d at 116, but we have declined to decide where the burden of proof on that portion of the rule lies. *Calvin-Humphrey v. District of Columbia, supra,* at 800 n.20. *Compare Trbovich v. United Mine Workers,* 404 U.S. 528, 538 n.10, 92 S.Ct. 630, 636 n.10, 30 L.Ed.2d 686 (1972), and *United States Postal Service v. Brennan, supra,* 579 F.2d at 191, *with Nuesse v. Camp, supra,* 128 U.S.App.D.C. at 180, 385 F.2d at 702, and 7A Wright & Miller, *supra,* at § 1909. A presumption of adequate representation will arise, however, when an existing party seeks the same ultimate objective as the applicant. *United States Postal Service v. Brennan, supra,* at 191. "[A] slight difference in interests between the applicant and the supposed representative" will not suffice to show inadequacy of representation. *Nuesse v. Camp, supra,* 128 U.S.App.D.C. at 181, 385 F.2d at 703.

■ Appellant advances an unpersuasive argument that its interests were not adequately represented at trial by the Pasternaks. By opposing the January 30, 1980, amendment of the trial court's initial order, the Pasternaks pursued precisely the same path that appellant would have followed had its purported right to intervene been accepted. Both the Pasternaks and appellant desired to proceed with the Exchange Agreement as originally written, without substitution by Canterbury Tales. Moreover, a further identity of interests existed between appellant and the Pasternaks. Appellant's desire to become the owner of the property matched the Pasternaks' substantial economic stake in preserving appellant's participation in the Exchange Agreement, as a purchase of the property by Canterbury Tales would require the Pasternaks to pay a four percent sales commission to the lease broker. Given that coalescence of appellant's and the Pasternaks' goals, we conclude that appellant's interests were "adequately represented" for the purposes of Rule 24(a)(2).[6]

## IV

■ The invocation and the operation of Rule 24(a)(2) are premised "[u]pon timely application" by the proposed intervenor. Super.Ct.Civ.R. 24(a). The determination of the timeliness of the proposed intervenor's motion lies within the trial court's "sound discretion," and "unless that discretion is abused, the court's ruling will not be disturbed on review." *NAACP v. New York,* 413 U.S. 345, 366, 93 S.Ct. 2591, 2603, 37 L.Ed.2d 648 (1973) (footnote omitted); *accord, Natural Resources Defense Council v. Costle,* 183 U.S.App.D.C. 11, 14, 561 F.2d 904, 907 (1977).

■ As the trial court noted, appellant's intervention motion was made after "a final judgment ha[d] been announced and [was] subject only to a minor change in an order."[7] Intervention at that stage necessitates an especially wasteful and duplicative expenditure of judicial resources.

---

**6.** Canterbury Tales contends that the same attorney who represented appellant during the Exchange Agreement negotiations also represented the Pasternaks in the underlying action, thus nullifying appellant's claim of inadequate representation. *See Carroll v. American Federation of Musicians of the United States and Canada,* 33 F.R.D. 353, 353–54 (S.D.N.Y.1963). However, there is no support in the record for that allegation.

**7.** Canterbury Tales' contention that the trial court erred in entertaining an oral motion to intervene, despite appellant's noncompliance with Super.Ct.Civ.R. 24(c), lacks merit. Appellant's arguments about the interests it sought to protect and the potential harm to those interests arising from the underlying lawsuit fairly appeared before the trial court from the pleadings and the proceedings. In such circumstances, any additional showing of purported interest and prejudice as envisioned by Rule 24(c) would be superfluous. *Town of North Hempstead v. Village of North Hills, supra,* 80 F.R.D. at 716.

The trial court did not abuse its discretion in declining appellant's invitation essentially to relitigate an already concluded action.

*Affirmed.*